U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

JUN - 9 2023

CLERK, U.S. DISTRICT COURT
By_____ Deputy

THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

CHRISTOPHER K. MCNEILL,
Plaintiff,

v.

TYSON FRESH MEATS, INC.,
Defendant.

Case No.: 2:23-CV-041-Z

PLAINTIFF'S MOTION FOR   SUMMARY JUDGMENT

Plaintiff Christopher K. McNeill ("Plaintiff" or "CKM"), PRO SE, hereby moves for summary judgment on his claims against Defendant Tyson Fresh Meats, Inc. ("Defendant" or "Tyson") for religious discrimination, failure to reasonably accommodate, and retaliation, pursuant to Rule 56 of the Federal Rules of Civil Procedure. In support of this motion, Plaintiff submits the following undisputed material facts:

It is a matter of fact not a matter of opinion that the Defendant 1. Discriminated against CKM was 2. Intentional and 3.Retaliatory and is still trying to deceive me and the court with answer #4 the second non numbered statement, and finally that the defendant is liable for Negligence as the Defendant forced CKM to take medical treatment in which he got injured that changed my life forever and pain and suffering due to their 4.negligence and forcing CKM to take a medical procedure by coersion.

1. Discrimination:

Defendant admits that Plaintiff requested accommodations for their vaccine policy, but did not clarify that Plaintiff tried on 2 separate occasions 10-05-2021 again on 10-13-2021  on both occasions the Plaintiff received the only policy that HR could offer Leave of Absence plus with no pay for a year or Terminated in the spot, CKM was told before HR or Teamsters rep even read the religious exemption. CKM tried to ask questions but was cut off and told that's it no conversation the Defendant knew my accomodations before they knew CKM was even requesting an accomodations. There must be an interactive process to have attempted to accommodate the Plaintiff. The Defendant signed a bargained agreement on September 14, 2021,  including a provision for interactive accommodations for employees with religious exemptions. # 4 on the signed by Defendant stating that the Defendant would accommodate by an interactive process to find out CKM has extensive sales manager in Ford BMW DODGE MITSUBISHI etc as sales manager 15 years been F&I manager 3 years the Defendant did not in any way even try to accommodate CKM. The Plaintiff submitted two religious exemption requests, one on October 5, 2021, and another on October 13, 2021, as well as an email to corporate on October 13, 2021  begging in the email like he was at HR both days. It is a fact the Plaintiff received a policy that the

Defendant structured Nation wide and with the black and white signature if agreement can show it is a fact that CKM was never interactively accommodated and with the agreement to accommodate there is no undue hardship that can be claimed as the Defendant already bargained and signed agreement. CKM will also attach the same two policies offered in Michigan. The EEOC makes it very clear that just because an employee that momentarily gives into the force, coercion, discrimination does the thing he tried to legally get accommodations for does not mean he gives up his rights.
It is a matter of Fact and not Opinion that Defendant  Discriminated against
Plaintiff CKM in their own agreement.
Attachments
1A: Bargained agreement
2A: Religious Exemptions
3A: Michigan plant received same two options (policies) as my bargained interactive accommodation (showing that I did not get accommodation as fact)
4A: EEOC cited CKM does not give up rights even if he momentarily gives in and takes medical treatment he still has all his religious rights.
5A: Email to corporate same day as second try at religious exemption (shows how desperate defendant was really trying to get an accommodation)

2. Intentional infliction of emotional distress:
The Defendant intentionally ignored the Plaintiffs pleas on the 5th of October 2021, again in the 13th of October, and never replied to any calls or emails. CKM asked please please please please please at least reply to email sent on 10-13-2021 Chris was begging hr as in email that is attached and will show how desperate the Plaintiff was. The Defendant would send certified mail with the letter inside stating he had 10 days to pay on health benefits but the mail wasn't mailed til 12 days later so health insurance cancelled. The defendant calls and offers CKM workmen's comp that he has to say no to because he would have to sign the Defendants paperwork making any action the Plaintiff could take null and void. The Defendant has there own workman's comp. The Defendant states on after answer # 4. Admitting Jurisdiction (Tyson is without sufficient knowledge to admit or deny wether CKM filed a charge of Discrimination with EEOC they also state wether I received a right to sue. The Defendant answered the EEOC as respondent and got the exact same email at the same time CKM got the email it was cc to them. They don't want the court to be aware that yes they did know that and that is the intentional reason I was terminated with no notice 1 day after we both got right to sue with no determination made by EEOC that was intentional and I also lost my long term disability on 01-16-2023 so they are intentionally trying to hurt the person that has already had his life changed forever due to the adverse reaction. Facts Intentional infliction of emotional distress.
1B: certified letter and date mailed
2B: Defendants employee name and # that offered workman's compensation
3B: proof Defendant knew of EEOC and answer as respondent
4B Right to sue letter cc to Defendant proof that they knew Eeoc right to sue lied in answer 14th fired CKM in 15th

3. Retaliation
The Defendant Cancelled CKM insurance with a very easy to see retaliation dating notice 12 days later mailing it was cancelled before CKM received when he needed it badly due to the adverse reaction that

he had. The Defendant Terminated him the day after they received the right to sue letter and they felt like they could treat me any way again they felt I am glad this court can see it, I'm here and Im attaching the form I got in January when I luckily found out by chance no one notified me and they had no reason for termination at the time. The long term insurance stopped 31 days after I was released for no reason no change in any physician that has seen or talked to me now I haven't had any check since 1-11-2023 I am thankful that the court let me proceed. The very answer in this case is retaliation they want this court to believe they are too big and that these attys didn't know.....well I'm to poor to hire an attorney and I am stating facts that they did know and they tried to act like there unaware for only one reason. So this very Court wouldn't know that The Defendant fired me the next day after they did receive my notice right to sue the same day I did. Defendant ended my long term disability and didn't care. CKM had nothing to fight back. I have GOD and he is still with me and I am faithful that the wrongs will be righted as

facts of discrimination
1C: Termination report
2C: Ending of long-term disability

4. Negligence
The Plaintiff has shown that from before he even knew he was going to ask for religious exemption that the Defendant signed an agreement with his Union CKM has shown that it is a fact that the Defendant did not have any interaction with him even when he was begging so it is a fact that they discriminated against him by the terms of there very agreement and by that aline forcing by fear of homelessness, food, livelihood coersion, made CKM take the medical treatment that caused the adverse reaction that has been a part of his life as painful neuropathy in his legs since two weeks after the treatment or 11-04-2021 that Defendant forced CKM to take.
Fact Negligence
1D: Definition of Negligence

WHEREFORE, Plaintiff respectfully requests and Prays that this Court enter summary judgment in his favor on all claims, and award damages, costs, and any further relief the Court deems just and proper.

Dated: June 9 2023

CHRISTOPHER K MCNEILL
2200 SW 7TH AVE #602
806-410-6215
cmcneill0114@gmail.com


Attachments:

**Memorandum of Agreement**
**Mandatory Covid-19 Vaccinations**

Tyson Foods (the "Company") and the Teamsters Local Union No. 577(hereinafter "the Union"), together "the parties," recognize that the Company is undergoing a challenging time as the Covid-19 virus and its variants continue to plague workers in the United States. The parties understand that new variants of COVID-19 are more contagious, more deadly and responsible for most cases in America today. The parties are aware that, in some of the communities where the Company operates, doctors and hospitals are once again overwhelmed, while the U.S. Centers for Disease Control and Prevention is reporting nearly all hospitalizations and deaths in the U.S. are among the unvaccinated population. At the same time, the parties acknowledge that almost seventy-five percent of our current team members are fully vaccinated. The Company strongly believes, and the Union acknowledges that requiring our team members to get fully vaccinated is the single most effective way to protect our team members, their families and our communities. In that context, after completing extensive good faith bargaining and considering numerous proposals by both parties, including the Union's proposal that unvaccinated team members would be permitted to continue working, wearing compliant protective face coverings and utilization of periodic testing as an alternative to vaccination, which was rejected by the Company, the parties agreed as follows:

1. Team members will be required, unless excused for documented medical or religious reasons, to become "fully vaccinated" for the Covid-19 virus on or before November 1, 2021.

2. "Fully vaccinated" means that the team member has received two doses of the vaccine, if required, plus two (2) additional weeks.

3. Team members who are not "fully vaccinated" by November 1, 2021, and who have not been granted an approved accommodation for a medical or religious reason will be subject to termination.

4. The Company's onsite Human Resources professionals will engage Team Members who request an accommodation for medical or religious reasons in an interactive process to assess the merits of each request and determine if an accommodation is possible. Team Members will receive a



$Fact$

Exhibit 1 page 1

1 A

response from Management for all requests properly filed with Human Resources.  Upon request by the Team Member's union steward, if available, may participate in the process.

5.  The Company shall provide literature and educational sessions, in multiple language as available, to explain the benefits and risks of the COVID vaccines. Team Members shall be compensated for time spent in educational sessions as standard meeting time.

6.  To encourage Team Members to comply with this requirement, the Company intends to offer opportunities to get vaccinated at work and during work hours for Team Members over the course of the next few weeks.

7.  By November 1, 2021, the Company will coordinate more than 100 vaccination events across all of its domestic sites.

8.  The Company will make every effort to continue to extend on-site vaccination events for its Team Members to eligible family members based on vaccine and resource availability.

9.  As an alternative, Team Members who choose to get vaccinated off-site and outside work hours shall receive four (4) hours of paid time for each dose, upon providing proof of the date, time and location of their vaccination to the plant Human Resources Department.

10. Effective retroactively to 3/2/20 no attendance points shall be administered to Team Members for COVID- or vaccine-related absences.

11. Team Members who have tested positive for COVID-19 who undergo treatment related to virus fighting antibodies and who have demonstrated proof of such treatment or have physician's documentation that states the Team Member must wait 90 days due to an underlying health condition before getting the vaccine before November 1, 2021 will have the opportunity to submit a request of a medical accommodation to continue to work for 90 days post treatment or positive COVID test.  The Team Member will then have up to 45 days to become fully vaccinated.  Failure to be fully vaccinated upon completion of the 45 days will result in termination.

Exhibit 1 Page 2

( A

12. Team Members who are terminated for failure to comply with the Company's vaccination requirement on November 1, 2021 but who become fully vaccinated within 180 days (by April 30, 2022) of their termination date shall be reinstated.

13. Team Members who are fully vaccinated and test positive for COVID-19 in the six (6) month period following the date of this Agreement shall be placed on paid administrative leave for up to 2 weeks (80 hours).

14. Team Members who are terminated for failure to meet the Company's vaccination requirement by November 1, 2021 will maintain a positive rehire status and will be subject to the Company's local "rehire" employment protocols.

15. The Company agrees to improve its vacation eligibility requirement by reducing the time period from twelve (12) months to six (6) months for the time period in which Team Members earn their first week of vacation. All other elements of the applicable vacation policies will remain the unchanged.

16. The Company will continue its existing practice of paying Team Members who will be fully vaccinated by November 1st, 2021, a one-time payment of $200.

17. Effective January 1st, 2022, the Company agrees to implement a mechanism for earning paid time off up to a maximum of 20 hours per calendar year.

In exchange for the above, the Union agrees to the following:

1. To withdraw any pending grievances (whether filed by the International Union or any local union) over the imposition of the vaccination mandate or the effect of the same.

2. Not to file any additional grievances (whether filed by the International Union or any local union) over the decision to mandate the vaccine, or over any individual discipline and/or termination that results from a team member's failure to comply with this mandate.

Exhibit 1 page 3

I am Christopher Kenneth McNeill. I live at 814 S Lamar Street (Life Abundant Ministries) Amarillo TX 79106, in the United States Of America! Where we have as one of our very first freedoms is freedom of religion!

- I am notifying my employer Tyson, of my personal belief that taking any vaccine will come between my God, faith, beliefs, that I put any foreign vaccine into my God given blood. I have paid weekly dues since my start date over 5 years ago, to my local union the representative (Jose ) I believe simply said they will not accept if you turn it in they will send you home for at least 3 months without pay. I do not accept that I have the right to practice my beliefs in choosing to not go against God and I am not getting the vaccine, and I am not quitting nor can I survive on 0 income like the union that fights for me stated to me, was all they knew

I have called and talked to different legal entities. I am only practicing my religious rights. Here and now by notarized statement of myself as an individual natural born United States of America citizen. I am now using any and all rights I am entitled to as an American citizen. I am especially today using my rights as the Title VII of the Civil Rights Act of 1964 and any and all of the law as it protects my rights from any form if discrimination to any person or persons due to their highly regarded religious beliefs in doing or not doing any action, any act, any thing that the person believes is not with his or her strong religious beliefs. I am not limiting nor stating that this is the only right, or rights I am using, I am stating that due to my beliefs that I strongly stand by I am expecting to not get any different treatment from anyone else at my workplace. I am expecting the same pay, the same overtime pay, the same job that I have been enjoying and just won a bid to A shift at the same maintenance pay. I expect this to stay private and only be shared with decision makers in this process.

I am expecting if Tyson sends me home as has been told will happen. I reciever the same pay, I cannot go with 0 income and I cannot get the vaccine. I am in the United States of America where religion has since the birth of America been a strong belief of founding fathers, written in the constitution and the legal right of Americans to claim without discrimination, in any way!)

I haven't had a vaccine since 4-21-2010 that is the day my wife and mother of 2 of my children took her own life! That changed me as it would anyone. I turned to God/Jesus at that time. I didn't get my 4 month old daughter any vaccines after that nor my son that was turning 4 in 4 days. I haven't had a flu vaccine or any vaccine since that day as I believe that my god given blood is the only immune system I or my children need.

No mandated or any other vaccine is going to come between my faith and make me feel as if I am going against my faith, my god. I am not stating that I don't take aspirin, tylenol, etc. I am stating that I don't take any vaccines in my blood, or in any other way. I am a human that is also a soul, and I don't take vaccines in any way into my perfectly healthy fully GOD immunized natural blood. I have had Covid 19 and Tyson sent me home for two weeks, after their test stated I was Positive for the covid 19, I never had any symptoms except I tasted metallic

 10.5.2021

EMILEE R. CAIN
NOTARY PUBLIC
STATE OF TEXAS
ID # 132655081
My Comm. Expires 09-02-2024

type

flavours at times in my mouth. I am only stating this to show that God has already made my bodies God given immune system ready to fight any disease that comes into this world and in contact with myself or my children. I feel great and expect my rights to be upheld with the utmost privacy and respect to be given to myself and or children and all that is required by all employers, educators, government, or any and all others that the rights of myself and or my children are being tested inside the united states of america.

I truly appreciate your time and discretion to this matter.

These are highly personal beliefs and I would certainly not be sharing with any strangers as the person reading this is to me. I am already feeling violated in a way but I am sharing this as it is what I am forced to do to keep my way of earning a living at Tyson. I have been an employee for over 5 years. Where I expect to continue growing with the company.

- I am going to attach some of the laws I am speaking of. I am aware of the OSHA fines Tyson could be fined if Tyson just let unvaccinated employees work with no exemption. I am not going to be a fine to Tyson as I will have an exemption for religious beliefs and freedom of religion, and discrimination and hostile work environment etc...

In God WeTrust!

Thank You
Christopher Kenneth McNeill
806-410-8527
cmcneill0114@gmail.com

H.R. TYSON x_____
Date. x_____

Christopher McNeill_____
Date. _____

3. Not to file any unfair labor practice charges with the National Labor Relations Board against the Company as the result of the Company's decision to mandate the vaccine, or over any individual discipline and/or termination that results from a team member's failure to comply with this mandate.

4. To publicly support the Company's vaccination mandate as necessary and essential to protect the health and safety of the Company's team members.

5. To ensure that all of its local unions, union officers and representatives do not do anything that would undermine this mandate.

This Memorandum of Agreement will become effective upon the date of signature. This Memorandum of Agreement will be binding on the Company, the Union, and each local union (including officers, representatives, and stewards) that is party to any collective bargaining agreement with the Company. The parties will meet to consider and discuss the incorporation of any subsequently issued mandatory or recommended federal guidelines which may apply. The above is the full and complete agreement of the parties on this matter and any provisions or proposals by either party not specifically included in this agreement is deemed rejected.

Signed this ___ day of September 2021.

On Behalf of Teamsters Local Union No. 577

By: _____

Its: President and Business Manager

Company

By: _____

Its: Human Resources Director

Exhibit 1 Page 4

 **Gmail**

Karen Moore <km8joy@gmail.com>

---

**Tyson Food Hit with Discrimination Claim Over Covid Vaccine Requirements | Michigan Employment Law Advisor**

---

**Chris McNeill** <cmcneill0114@gmail.com>                                        Fri, Jun 9, 2023 at 2:21 PM
To: Karen Moore <km8joy@gmail.com>

Menu
*Jason Shinn of Shinn Legal, PLC*

See
3 A 3

# *Michigan Employment Law Advisor*

Leading Insight & Analysis of Employment Law Matters

# Tyson Food Hit with Discrimination Claim Over Covid Vaccine Requirements

By Jason Shinn on June 23, 2022

POSTED IN COVID-19



On June 9, 2022, Tyson Foods and its subsidiary, The Hillshire Brands Company, were sued over alleged employment discrimination.



The lawsuit is by a former employee, Redina Hayslett, who claims she was terminated after refusing the COVID-19 vaccine on religious grounds.

## Why it Matters:

We previously predicted companies should prepare for a litigation trend over religious discrimination claims involving Covid-19 vaccine requirements. See The Next (Litigation) Pandemic – Religious Discrimination Claims. This recent suit against Tyson Foods bolsters our conclusion.

It also highlights an added wrinkle for employers: Tennessee elected to pass legislation punishing employers who enforced certain workplace policies involving Covid-19 vaccine requirements. Other states have taken similar steps to interject governmental oversight of private sector HR; Michigan thankfully is not one of those states.

But for companies with operations where state legislators are now looking over their employment policies like Tennessee, avoiding employee Covid-19-related lawsuits is going to be an expensive challenge.

## Going Deeper:

In August 2021, Tyson Foods and its subsidiary, The Hillshire Brands Company, made it a condition of continuing employment that all U.S. based Tyson employees would have to be

vaccinated against COVID-19. Tyson also required employees to provide proof of vaccination, unless an employee had a documented and approved reasonable accommodations for a disability or sincerely held religious beliefs, practices, or observances.

Plaintiff submitted a religious accommodation request stating that her belief in the power of prayer, faith in Christ, religious freedom, and First Amendment rights prohibit her from receiving a vaccination for COVID-19.

Tyson responded to Plaintiff's request for religious accommodation with a determination that the only accommodation Defendants could give Plaintiff was an unpaid leave of absence from work for a period of up to one year. Plaintiff eventually responded by suing Tyson and its subsidiary.

*Policy Not Accomidation Fact*

**Extending Government Oversight to HR:**

Tennessee passed a law in November 2021 prohibiting private businesses and other entities from compelling or otherwise taking "adverse action" against a person relative to providing proof of having received a COVID-19 vaccination if the person objects to being vaccinated "for any reason." Thus, under the Tennessee law, it is illegal for employers like Tyson, to take adverse action against a person based on their vaccination status.

Further, Tennessee politicians removed any qualifying or limiting language for what objections must accept, e.g., objections for religious or medical reasons. This means employees with any sort of objection, whether unfounded or frivolous are insulated from discipline. And this sort of broad prohibition in Tennessee and other like-minded states will no doubt fuel employee vaccine-related lawsuits against employers.

3 A 4

Christopher K. McNeill
(806) 410–8527
cmcneill0114@gmail.com

# Section 12: Religious Discrimination

4A

---

**[212]**  *Compare Storey v. Burns Int'l Sec. Servs.*, 390 F.3d 760, 765 (3d Cir. 2004) ("An employer's failure to reasonably accommodate an employee's sincerely held religious belief that conflicts with a job requirement can also amount to an adverse employment action unless the employer can demonstrate that such an accommodation would result in 'undue hardship.'"), *EEOC v. Townley Eng'g & Mfg. Co.*, 859 F.2d 610, 614 n.5 (9th Cir. 1988) ("The threat of discharge (or other adverse employment practices) is a sufficient penalty.  An employee does not cease to be discriminated against because he temporarily gives up his religious practice and submits to the employment policy." (internal citation omitted)), *and Rodriguez v. City of Chi.*, No. 95-C-5371, 1996 WL 22964, at *3 (N.D. Ill. Jan. 12, 1986) ("It is nonsensical to suggest that an employee who, when forced by his employer to choose between his job and his faith, elects to avoid potential financial and/or professional damage by acceding to his employer's religiously objectionable demands has not been the victim of religious discrimination."), *with Brooks v. City of Utica*, 275 F. Supp. 3d 370, 378

5A

———— Forwarded message ————
From: **Chris McNeill** <cmcneill0114@gmail.com>
Date: Wed, Oct 13, 2021, 6:06 PM
Subject:
To: <derek.burleson@tyson.com>

← To Defendant
Same day as
2nd Try which HR.

   Good afternoon Mr Burleson
I've called and left you two different messages and I just wanted something on paper that I
have contacted you trying to get some type of agreeable accommodation. My h&r office has
said that they only accommodation that they can offer me is a leave of absence for a year with
no pay I don't see that as an accommodating at all. I see that as me working for the company
for almost 6 years and then all the sudden receiving no pay because I have a belief that it is in
direct conflict with God to put in my God given blood a man made vaccine. I have not taking a
vaccine 4 21 2010 that is the day my wife took her own life and I turned to my faith at the time
and still currently have my strength my faith and belief in my creator and that is a fundamental
right I am due as an american. With no discrimination I am being descriminated against if all I
am being offered is go from almost 6 years with Tyson giving my energy for a job I appreciate
and recurving a paycheck weekly I appreciate as well. To your companies offer if 0 dollars per
week with 0 appreciation for me my family and my relationship with God that is not an
accomodations and my HR department said specifically that is all they are offering anyone
with religious or medical exemptions.

I have called you specifically 3 times as you are the contact that is said to contact. It is hard to
believe that with 15 years if sakes manager at Ford Dodge Jeep Mitsubishi Honda dealerships
I am one if the best sales people in the company. I am working as a Maintenance employee.

My expertise and knowledge if over 15 years and certified in Finance and Income since 2001 there is an accomodation that won't hurt your company in any way and won't hurt me in any way as I will receive the same pay as I receive now with out going against God. I do strongly believe that I am not to take a vaccine I expect a true accomidation by the end of this week. I have called left msgs. I have the times and proof if calls. Now I have emailed you. Please I pray I get what I am owed by my employer protected by my country, and my governor just wrote an executive order banning all entity's including private(Tyson) from any mandated vaccine to employees(me) or patrons. I can sell for you I am a great talker/salesman/order taker/ phone caller/ etc. I could write 185 or more jobs that Tyson could offer me as a true accomidation but you get the point. If Tyson just hates people if faith and doesn't agree with the laws if America please email or call and tell me that and we will go from there I will have a decision to make. I believe I have with every ounce if goodness and appreciation I have for Tyson asked fairly and in good faith to my self and my and your company Tyson plead with the company to offer me a true accomidation because no pay for a year no person of sound mind will agree that would be a fair accomidation any one could live, eat,pay rent, etc. On

   I apologize for the Grammer within this email. I am typing it on my phone. So I am sorry for that. Please please please please please please reply to this email. God bless you, me and America.
Have a great day and let me know the real accomidation your company is offering myself, please I am running out of time but don't write me you are offering nothing for a year that is not a true accomidation it is coercion and bullying me due to my faith.

Christopher K. McNeill
(806) 410--8527
cmcneill0114@gmail.com
approvedmitsubishi@gmail.com





Sent

Christopher McNeill
814 South Lamar Street
Amarillo, Texas 79106

Shawna in Legal called CKM offered him workmans comp through the Defendant not through regular and CKM was informed
he had to sign a waiver where he would lose his rights to ever hold the Defendant responsible so CKM had to decline
although he was really enticed CKM was very in need at that moment.she called from Legal she said # is 479-290-2718









# Tyson

February 21, 2022

**Not even Close to truth thrughout this Document.**

**VIA EEOC PORTAL**

Ian Schoff, Investigator
U.S. Equal Employment Opportunity Commission
Dallas District Office
207 S. Houston Street
Dallas, Texas 752020

**Proof that they Did Know for a Fact**

Re:   **Christopher K. McNeill v. Tyson Fresh Meats, Inc.[1]**
      **EEOC Charge No.: 450-2022-00676**

Dear Mr. Schoff:

Tyson Fresh Meats, Inc. ("Tyson") submits this Position Statement in response to the Charge submitted by Christopher McNeill ("McNeill").[2,3]

---

[1] Charging Party improperly identifies "Tyson" as the Respondent in this matter. The appropriate Respondent in this matter is Tyson Fresh Meats, Inc. Tyson Fresh Meats, Inc. respectfully requests that the Charge be amended to reflect the appropriate Respondent.

[2] The information and accompanying documentation contained herein and that which may be submitted hereafter, is strictly confidential and not to be used for any purpose other than the resolution of the current Charge and it may not be disclosed publicly. *See* 42 U.S.C. §§ 2000e-5(b); 2000e-8(e); 29 C.F.R. §§ 1601.22, 1601.26; and 56 Fed. Reg. 10847. To the extent Charging Party is in receipt of this information or accompanying documentation, Charging Party is advised that this information is strictly confidential and should not be disclosed publicly or to any individual unless they have a privileged relationship with that individual. Information and accompanying documentation contained herein designated confidential and/or containing sensitive medical information, confidential commercial or financial information, or trade secret information may not be disclosed to Charging Party.

[3] This response is based upon our understanding of the facts and the information reviewed thus far. Although there has not been an opportunity for formal discovery or a complete formal investigation, this response is submitted for the purpose of aiding the agency in its investigation and facilitating the informal resolution of these matters. This response, while believed to be accurate, does not constitute an affidavit or a binding statement of Respondent's legal position, nor is it intended to be used as evidence in a court or other proceeding unrelated to the Commission's efforts to investigate this Charge and make a determination. Because additional facts likely would be uncovered through discovery or following a full investigation, Respondent in no way waives its right to present new or additional information at a later date, for substance or clarification. Moreover, by responding to this Charge, Respondent does not waive, and hereby preserves, any and all substantive and procedural defenses that may exist to the Charge and Charging Party's allegations. Respondent requests that any efforts to contact its current or former managers be directed through its counsel.



Mr. Ian Schoff, Investigator
February 21, 2022
Page 2

In his Charge, Mr. McNeill alleges Tyson discriminated against him by denying him a reasonable accommodation due to his religious beliefs. His allegations are moot, however, as even he admits in his Charge that he chose to receive the COVID-19 vaccine just 13 days after he submitted his accommodation request. Mr. McNeill cannot argue that he has a sincerely held religious belief against the COVID-19 vaccine when he decided to be vaccinated so shortly after stating his alleged belief.[4]

## I.     TYSON'S POLICIES AND PROCEDURES

### A.     TYSON'S POLICIES FORBIDDING DISCRIMINATION, HARASSMENT, AND RETALIATION

Tyson is committed to ensuring the safety of its employees and complying with applicable federal and state employment laws. As part of that commitment, Tyson makes a Team Member Promise to its employees. In the Team Member Promise, Tyson highlights its commitment to a safe workplace for employees. **(Exhibit 1).**

Additionally, Tyson has an Equal Employment Opportunity Policy which provides that employment decisions will not be made based upon any protected status including religious beliefs. **(Exhibit 2).**

Tyson also forbids harassment and discrimination based upon any protected status. Its Harassment and Discrimination Policy provides multiple avenues for employees to raise any concerns. Those avenues include supervisors, Human Resources, the Employment Compliance Department, and the Tell Tyson First hotline. The policy explains that Tyson will not retaliate against employees for raising any concerns. **(Exhibit 3).**

Further, Tyson complies with applicable laws regarding reasonable accommodations as set out in its ADA Accommodation Policy. **(Exhibit 4).** Finally, Tyson provides FMLA, non-FMLA, and personal leaves of absences to employees. Its Leave of Absence Policy informs employees of the available leaves. **(Exhibit 5).**

### B.     TYSON'S COVID-19 POLICIES

Tyson's commitment to employee safety is further demonstrated in its COVID-19 practices.

After nearly eighteen months of using a combination of COVID-19 mitigation efforts to keep its team members safe, Tyson grew concerned as COVID-19 and the Delta variant continued to spread throughout the country. Tyson determined – based on guidance from the public

---

[4] Mr. McNeill alleges only discrimination based on his religion. To the extent Mr. McNeill's Charge addresses a potential worker's compensation claim, Tyson has contacted Mr. McNeill to advise that he may submit a worker's compensation claim. Mr. McNeill declined to do so. To the extent he alleges disability discrimination (which he has not), Tyson is accommodating any alleged disability with a leave of absence.

Mr. Ian Schoff, Investigator
February 21, 2022
Page 3



health authorities, other federal agencies, and a growing body of medical evidence — that mandating vaccination was a necessary and effective measure to protect its workforce and contribute to the worldwide effort to combat the COVID-19 pandemic. Accordingly, on August 3, 2021, Tyson announced to all U.S. team members that it would require its U.S. workforce to receive the COVID-19 vaccine. Team members at Tyson's production facilities, including Mr. McNeill, were to be fully vaccinated by November 1, 2021. Tyson later distributed its COVID-19 Vaccination Policy (the "Policy") to all U.S. team members. **(Exhibit 6).**

Importantly, Tyson took steps to ensure the Policy is fair and addresses the needs of its team members.  Tyson provides reasonable accommodations to employees who cannot receive, or object to receiving, the COVID-19 vaccine due to a sincerely held religious belief, practice, or observance. Those employees seeking a religious accommodation from the Policy must submit such requests to Human Resources. Tyson's receipt of a vaccination accommodation request initiates an interactive process between the requesting employee and Tyson to evaluate the accommodation request and to consider what type of reasonable accommodation may be available in the specific circumstance presented by the individual employee.

As part of this interactive process, Tyson's Human Resources personnel discuss with the employee potential reasonable accommodations that are consistent with Tyson's objective of protecting the health and safety of its workforce, including the requesting employee, and of other persons who interact with Tyson's employees. For example, teleworking may be available as an accommodation if the essential functions of the requesting employee's position can effectively be performed in a remote work environment.

If no other reasonable accommodation is available at the time of the team member's deadline to be fully vaccinated, Tyson offers an alternative reasonable accommodation through its Leave of Absence Plus ("LOA Plus") program, which provides for the continuation of the team member's healthcare benefits with premium contributions from Tyson.  Under the LOA Plus program, a team member who qualifies for a religious accommodation may elect to take an unpaid leave of absence — potentially for up to one year, depending on the team members' length of service with Tyson.[5] (*See* **Exhibit 5 and Exhibit 6).**  In these uncertain times, Tyson will continue to evaluate whether there are possible alternative reasonable accommodations that do not impose an undue hardship on Tyson or on the requesting team member's coworkers and would allow the team member to return to work.

## II.    MR. MCNEILL'S EMPLOYMENT

Mr. McNeill was employed by Tyson as a Maintenance Generalist. He worked at Tyson's Amarillo, Texas location in the Hides and Tannery division. In his role, Mr. McNeill was

---

[5] Once an employee exceeds the leave of absence permitted by the LOA Plus program, Tyson will assess whether an additional unpaid leave of absence is to be provided pursuant to the Americans with Disabilities Act or other applicable law.

Mr. Ian Schoff, Investigator
February 21, 2022
Page 4

responsible for performing general maintenance duties on the physical facilities at the Amarillo location. These job duties require that Mr. McNeill be physically present at work.

When Tyson announced that all facility-based team members must be fully vaccinated, Mr. McNeill requested an accommodation on October 5, 2021. Mr. McNeill did not specify any particular faith but stated that he believes "taking any vaccine will come between God, faith, beliefs, that I put any foreign vaccine into my God given blood." He further claimed he had not received any vaccine since 2010 into his "perfectly healthy fully GOD immunized natural blood." **(Exhibit 7, Accommodation Request).**

The only accommodation requested by Mr. McNeill was an exemption from the COVID-19 vaccination requirement so he could continue to work while vaccinated. During discussions with HR Manager John (Trent) Pontius, Mr. Pontius reviewed explained that Mr. McNeill's job duties could not be performed remotely and that working from home would not be a possible accommodation; LOA Plus would be the only possible accommodation. Mr. Pontius also explained that Mr. McNeill still had time to be fully vaccinated by November 1, 2022 if he were to receive the single-dose Johnson & Johnson vaccine by October 18, 2022 (allowing two full weeks after the dose to become "fully vaccinated" per the CDC). Tyson then granted Mr. McNeill's accommodation request and offered LOA Plus to him as an accommodation. Although Mr. McNeill did not appreciate the LOA Plus as an accommodation, he accepted LOA Plus. Mr. Pontius considered the matter closed and planned for Mr. McNeill to take LOA Plus effective November 1, 2022.

According to Mr. McNeill's Charge, he received the single-dose Johnson & Johnson vaccine on October 18, 2022, despite his alleged beliefs against vaccines. Although he did not submit his vaccination card to Tyson, Mr. McNeill did tell Mr. Pontius later that same day that he had already suffered a reaction to the vaccine without providing more information. Mr. Pontius advised Mr. McNeill to seek assistance from Health Services at the facility. Mr. McNeill reported to Health Services that he suffered facial spasms due to the vaccine, and Health Services sent him home for the day. Mr. McNeill has not returned to work since October 18, 2022. Notes from his healthcare provider suggest the facial spasms have subsided. He now claims he is weak in the legs, but that same note casts doubt on whether his symptoms were caused by the vaccine. **(Exhibit 8, Doctor's Note).** Tyson has placed Mr. McNeill on a leave of absence as an accommodation for his condition until he is able to return to work (fully vaccinated).

## III.   MR. MCNEILL CANNOT RECOVER ON HIS CLAIMS.

Mr. McNeill asserts that he was denied a reasonable accommodation to his religious beliefs and also that Tyson discriminated against him due to his religious beliefs. Mr. McNeill's allegations fail because he ultimately received the COVID-19 vaccine; he cannot establish any sincerely-held religious beliefs against getting vaccinated when he chose to become vaccinated just days after making his accommodation request.

Mr. Ian Schoff, Investigator
February 21, 2022
Page 5



## A. TYSON PROVIDED A REASONABLE RELIGIOUS ACCOMMODATION TO MR. MCNEILL.

In his Charge, Mr. McNeill asserts Tyson denied him a reasonable accommodation based upon his religious beliefs. In order to establish a *prima facie* case of denial of a religious reasonable accommodation, Mr. McNeill must prove (i) he has a *bona fide* religious belief that conflicted with a requirement of his employment; (ii) Tyson was aware of his belief; and (iii) he suffered an adverse employment action for failing to comply with the conflicting employment requirement. *See Weber v. Roadway Express, Inc.*, 199 F.3d 270, 273 (5th Cir. 2000). If Mr. McNeill carries his burden, Tyson will nevertheless prevail if it reasonably accommodated him or was unable to do so without undue hardship. *Id.*

Mr. McNeill has failed to demonstrate that any sincerely-held religious belief would prevent him from taking a COVID-19 vaccine because ***he decided to become fully vaccinated against COVID-19***. In his accommodation request and in his Charge, Mr. McNeill failed to identify a religion, though he does profess belief in "God." Assuming for purposes of this Position Statement that Mr. McNeill is a Christian (though he has not specified as such), he claimed that his religious beliefs prevented him from becoming vaccinated and that he had not received a vaccine since 2010, over 12 years ago. If Mr. McNeill's beliefs against a vaccination were that sincere, it makes no sense that he would become fully vaccinated less than two weeks after making his accommodation request when Tyson had already granted his request with LOA Plus. Regardless of the beliefs that Mr. McNeill stated in his accommodation request, his allegations fail because he cannot demonstrate any *bona fide* religious belief that would prevent him from submitting to the vaccine when he admits in his own Charge that he ultimately decided to become vaccinated.

Even if Mr. McNeill can demonstrate a *bona fide* religious belief (which he cannot), his allegations fail because Tyson provided him with a reasonable accommodation by granting LOA Plus to him effective November 1, 2022. Courts stress that, "[o]nce an employer has established that it offered a reasonable accommodation, even if that alternative is not the employee's preference, it has satisfied its obligation under Title VII as a matter of law." *Horvath v. City of Leander*, 946 F.3d 787, 791 (5th Cir. 2020); *see also Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 68 (1986) (Title VII does not "requir[e] an employer to choose any particular reasonable accommodation."). A proposed accommodation is not unreasonable merely because it comes with a cost to the employee. *See Horvath*, 946 F.3d 787, 791 (5th Cir. 2020).

Mr. McNeill's duties as a Maintenance Generalist required him to perform his work onsite. He spent a great deal of the time on the production floor performing general maintenance duties. Such work cannot be done remotely. Since Mr. McNeill's job duties must be performed onsite and remote work is not a feasible option, Tyson offered him LOA Plus. Tyson's LOA Plus is a reasonable accommodation for employees requesting religious accommodations to the vaccine policy. In *Bruff v. Northern Mississippi Health Services, Inc.*, the Court found a leave

Mr. Ian Schoff, Investigator
February 21, 2022
Page 6

of absence to be a reasonable accommodation "where the likelihood of encountering further conflicts with her religious beliefs would be reduced[.]"  244 F.3d 495, 499, 501 (5th Cir. 2001); *see also Walden v. Centers for Disease Control & Prevention*, 669 F.3d 1277, 1294 (11th Cir. 2012) (where the employer removed the employee from her position without pay). Tyson fulfilled its obligations to Mr. McNeill by providing him a reasonable accommodation.

Mr. McNeill requested that he be fully exempt from Tyson's COVID-19 vaccine requirement, but Tyson is not required to do this, as it would pose an undue hardship by threatening the health and safety of Mr. McNeill and his co-workers. An employee is entitled to a religious accommodation only if the accommodation does not impose an undue hardship on their co-workers or employer, which is interpreted to mean causing anything more than a *de minimis* impact. *See Bruff*, 244 F.3d at 500 (finding undue hardship where plaintiff's colleagues would have to assume responsibility for patient assignments that conflicted with plaintiff's religious beliefs). *See also Weber*, 199 F.3d at 274-275 (it would constitute an undue hardship for the employer to change its driver assignment practices to accommodate the plaintiff's religious beliefs); *Eversley v. MBank Dallas*, 843 F.2d 172, 175 (5th Cir. 1988) (it would be more than a *de minimis* burden for an employer to require another employee to switch shifts with the plaintiff to accommodate his religious beliefs); *Harrell v. Donahue*, 638 F.3d 975, 980 (8th Cir. 2011) ("an accommodation creates an undue hardship if it causes more than a *de minimis* impact on co-workers") (citing *Brown v. Polk County, Iowa*, 61 F.3d 650, 655 (8th Cir. 1995)); *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 84 (1977) ("To require [an employer] to bear more than a *de minimis* cost . . . is an undue hardship."). "[S]afety considerations are highly relevant in determining whether a proposed accommodation would produce an undue hardship on the employer's business. Title VII does not require that safety be subordinated to the religious beliefs of an employee." *Finnie v. Lee County*, 907 F. Supp. 2d 750, 778 (N.D. Miss. 2012).  Requiring Tyson to ignore the health and safety of Mr. McNeill's coworkers by allowing him to continue working while unvaccinated would cause more than a *de minimis* impact on Tyson's business. Indeed, leaves of absence under similar vaccine policies have been upheld by other courts in recent months as reasonable accommodations. *See Barrington v. United Airlines, Inc.*, No.21-cv-2602, 2021 WL 4840855, at *4 (D. Colo. Oct. 14, 2021).

### B. TYSON DID NOT DISCRIMINATE AGAINST MR. MCNEILL DUE TO HIS RELIGION.

In his Charge, Mr. McNeill claims that Tyson discriminated against him because of his religion. The elements of a *prima facie* case for a religious discrimination claim are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class. *See Rubinstein v. Admins. of the Tulane Educ. Fund*, 218 F.3d 392, 399 (5th Cir. 2000).

Tyson's vaccination policy applies to all Tyson team members regardless of their religious affiliation.  Mr. McNeill fails to assert any facts that suggest Tyson treated similarly-situated team members outside of his protected class differently.  Indeed, Mr. McNeill is not being

Mr. Ian Schoff, Investigator
February 21, 2022
Page 7

singled out and cannot demonstrate that another similarly situated employee who was not in his protected class was treated more favorably. As such, he cannot establish a *prima facie* case.

Even if Mr. McNeill could establish a *prima facie* case of discrimination (which he cannot) Tyson has legitimate, non-discriminatory reasons for its actions – namely, to mitigate the spread of COVID-19, and protect the community at large, including its own employees. Mr. McNeill has not provided any information even suggesting those reasons are false. Accordingly, he cannot recover on his discrimination claim.

## IV.   CONCLUSION

For these reasons, Tyson respectfully requests that the Commission dismiss Mr. McNeill's Charge.

Please contact me if you have any questions or if we may be of further assistance.

Sincerely,

*Megan Ruwe*
Megan Ruwe (Feb 21, 2022 16:55 CST)

Megan Ruwe

Enclosures



## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Dallas District Office**
207 S. Houston Street, 3rd Floor
Dallas, TX 75202
(800) 669-4000
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
### (This Notice replaces EEOC FORMS 161 & 161-A)

Issued On: 12/14/2022

**To:** Mr. Christopher K. McNeill
2200 S.W. 7th Avenue #602
Amarillo, TX 79106

Charge No: 450-2022-00676

EEOC Representative and email:   Avie Murrell
                                 Investigator
                                 AVIE.MURRELL@EEOC.GOV

---

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 450-2022-00676.

On behalf of the Commission,

**Shemell D. Perry** Digitally signed by Shemell D. Perry
Date: 2022.12.14 15:07:58 -06'00'

For Travis M. Nicholson
District Director



**Cc:**
Megan  Ruwe
Tyson Foods, Inc.
2200 W DON TYSON PKWY
Springdale, AR 72762

Tracey Poyer
TYSON
2200 West Don Tyson Parkway
Springdale, AR 72762


**Please retain this notice for your records.**

| Date: | 01/03/2023 | Request for Employment Verification | PageNo: 001 |
|---|---|---|---|
| Time: | 13:53:41 | Tyson Foods, Inc. | Client: 100 |

**NAME AND LAST KNOWN ADDRESS OF APPLICANT**

Christopher K McNeill
814 South Lamar Street
Amarillo,TX  79106

Pers. No.     877588

I C

————————  VERIFICATION OF EMPLOYMENT  ————————

| Date of Employment | : | 07/11/2016 | WHY |
| Date of Termination | : | 12/15/2022 | |
| Present Position | : | | |
| Probability of Continued Employment | : | | |
| If Applicable, Is Continuation Likely: | | OVERTIME: | BONUS: |
| If Hourly, Average Hours Per Week | : | | |
| Date of Applicants Next Pay Increase | : | N/A | |
| Projected Amount of Next Pay Increase: | | N/A | |
| Date of Applicants Last Pay Increase | : | | |
| Amount of Last Pay Increase | : | | |
| Current Gross Base Pay | : | 21.75 | PERIOD: HOURLY |

| Gross Earnings: | 2023 | 2022 | 2021 |
|---|---|---|---|
| Base Pay | 0.00 | 1,572.00 | 36,536.81 |
| Overtime | 0.00 | 0.00 | 9,144.82 |
| Bonus/Prshr | 0.00 | 0.00 | 1,550.00 |
| Other | 0.00 | 0.00 | 0.00 |
| Total | 0.00 | 1,572.00 | 47,231.63 |

Remarks:

_Sidney Terrell_ ————  AUTHORIZED SIGNATURE  ————

**SIGNATURE OF EMPLOYER**

_Sidney Terrell_
**PRINTED SIGNATURE OF EMPLOYER**        DATE : 01/03/2023    TIME:   13:53:41
                                        PHONE: 806-335-7372

HR Clerk
Tyson Foods, Inc. Payroll Dept

Unum
Appeals Unit
PO Box 9548
Portland, ME 04104-5058
Phone: 877-975-3517
Fax: 207-575-2354
www.unum.com



April 27, 2023

CHRISTOPHER K MCNEILL
2200 SW 7TH AVENUE
APT 602
AMARILLO, TX 79106

RE:    McNeill, Christopher K
       Claim Number:        20554317
       Policy Number:       111886
       Unum Life Insurance Company of America

We are writing to provide you with information about your Long Term Disability appeal.  This letter does not constitute an appeal decision on your claim.

Benefits were not approved beyond January 15, 2023 on the basis you were no longer limited from performing the duties of a gainful occupation; therefore, you no longer met the definition of disability requirements.  We believe the available information supports that decision.

The U.S. Department of Labor requires us to provide you with the opportunity to review and respond to any new or additional evidence or rationale we considered, relied upon or generated during the review process before a final decision is made on your appeal.

Enclosed is the new information.  To avoid duplication, we did not include the information you submitted to us in the enclosed documents.

Before we make a final decision on your disability claim, you have a right to review and respond to this new information and/or rationale.  Your response must be received by us no later than May 12, 2023.

Any provided information should be time relevant to when your benefits ended on January 15, 2023.

If you do not wish to respond to this information and would prefer we make a final decision immediately, please contact me.

If you have questions about your claim or this process, please call our Contact Center at 877-975-3517, 8 a.m. to 8 p.m., Monday through Friday.  If you prefer to speak with me personally, I can be reached at the same toll-free number at extension, 42961.

We will identify your claim by your Social Security number or claim number, so please have one of these numbers available when you call.

Sincerely,

*Thomas*

Thomas
Lead Appeals Specialist

Enclosures:     Appeals: Other

THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

CHRISTOPHER K. MCNEILL,
Plaintiff,

v.

TYSON FRESH MEATS, INC.,
Defendant.

Case No.: 2:23-CV-041-Z

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Christopher K. McNeill ("Plaintiff" or "CKM"), PRO SE, hereby moves for summary judgment on his claims against Defendant Tyson Fresh Meats, Inc. ("Defendant" or "Tyson") for religious discrimination, failure to reasonably accommodate, Intentional Infliction of Emotional Distress, Retaliation, and Negligence, pursuant to Rule 56 of the Federal Rules of Civil Procedure. In support of this motion, Plaintiff submits the following undisputed material facts:

It is a matter of fact not a matter of opinion that the Defendant 1. Discriminated against CKM was 2. Intentional and 3. Retaliatory and is still trying to deceive me and the court with answer #4 the second non numbered statement, and finally that the defendant is liable for Negligence as the Defendant forced CKM to take medical treatment in which he got injured that changed my life forever and pain and suffering due to their 4. negligence and forcing CKM to take a medical procedure by coercion.

1. Discrimination:
Defendant admits that Plaintiff requested accommodations for their vaccine policy but did not clarify that Plaintiff tried on 2 separate occasions 10-05-2021 again on 10-13-2021 on both occasions the Plaintiff received the only policy that HR could offer Leave of Absence plus with no pay for a year or Terminated in the spot, CKM was told before HR or Teamsters rep even read the religious exemption. CKM tried to ask questions but was cut off and told that's it no conversation the Defendant knew my accommodations before they knew CKM was even requesting an accommodation. There must be an interactive process to have attempted to accommodate the Plaintiff. The Defendant signed a bargained agreement on September 14, 2021, including a provision for interactive accommodations for employees with religious exemptions. # 4 on the signed by Defendant stating that the Defendant would accommodate by an interactive process to find out CKM has extensive sales manager in Ford BMW DODGE MITSUBISHI etc. as sales manager 15 years been F&I manager 3 years the Defendant did not in any way even try to accommodate CKM. The Plaintiff submitted two religious exemption requests, one on October 5, 2021, and another on October 13, 2021, as well as an email to corporate on October 13,

2021, begging in the email like he was at HR both days. It is a fact the Plaintiff received a policy that the Defendant structured Nationwide and with the black and white signature of agreement can show it is a fact that CKM was never interactively accommodated and with the agreement to accommodate there is no undue hardship that can be claimed as the Defendant already bargained and signed agreement. CKM will also attach the same two policies offered in Michigan. The EEOC makes it very clear that just because an employee that momentarily gives into the force, coercion, discrimination does the thing he tried to legally get accommodations for does not mean he gives up his rights.

It is a matter of Fact and not Opinion that Defendant Discriminated against Plaintiff CKM in their own agreement.

Attachments

1A: Bargained agreement

2A: Religious Exemptions

3A: Michigan plant received same two options (policies) as my bargained interactive accommodation (showing that I did not get accommodation as fact)

4A: EEOC cited CKM does not give up rights even if he momentarily gives in and takes medical treatment he still has all his religious rights.

5A: Email to corporate same day as second try at religious exemption (shows how desperate defendant was really trying to get an accommodation)

2. Intentional Infliction of emotional distress:

The Defendant intentionally ignored the Plaintiffs pleas on the 5th of October 2021, again on the 13th of October, and never replied to any calls or emails. CKM asked please please please please please 5 pleases to at least reply to email sent on 10-13-2021 Chris was begging HR as in email that is attached and will show how desperate the Plaintiff was CKM got nothing again. The Defendant would send certified mail with the letter inside stating he had 10 days to pay on health benefits, but the mail wasn't mailed until 12 days later so health insurance cancelled. The defendant calls and offers CKM workmen's comp that he has to say no to because he would have to sign the Defendants paperwork making any action the Plaintiff could take null and void. The Defendant has their own workman's comp. The Defendant states on after answer #4. Admitting Jurisdiction (Tyson is without sufficient knowledge to admit or deny whether CKM filed a charge of Discrimination with EEOC they also state whether I received a right to sue. The Defendant answered the EEOC as respondent and got the exact same email at the same time CKM got the email it was cc to them. They don't want the court to be aware that yes they did know that and that is the intentional reason I was terminated with no notice 1 day after we both got right to sue with no determination made by EEOC that was intentional and I also lost my long term disability on 01-16-2023 so they are intentionally trying to hurt the person that has already had his life changed forever due to the adverse reaction. Facts Intentional infliction of emotional distress.

1B: certified letter and date mailed

2B: Defendants employee name and # that offered workman's compensation

3B: proof Defendant knew of EEOC and answer as respondent

4B Right to sue letter cc to Defendant proof that they knew EEOC right to sue lied in answer 14th fired CKM in 15th

3. Retaliation

The Defendant Cancelled CKM insurance with a very easy to see retaliation dating notice 12 days later

mailing it was cancelled before CKM received when he needed it badly due to the adverse reaction that he had. The Defendant Terminated him the day after they received the right to sue letter and they felt like they could treat me any way again they felt I am glad this court can see it, I'm here and I am attaching the form I got in January when I luckily found out by chance no one notified me, and they had no reason for termination at the time. The long-term insurance stopped 31 days after I was released for no reason no change in any physician that has seen or talked to me now, I haven't had any check since 1-11-2023 I am thankful that the court let me proceed. The very answer in this case is retaliation they want this court to believe they are too big and that these attys didn't know... well I'm too poor to hire an attorney and I am stating facts that they did know, and they tried to act like there unaware for only one reason. So, this very Court wouldn't know that The Defendant fired me the next day after they did receive my notice right to sue the same day I did. Defendant ended my long-term disability and didn't care. CKM had nothing to fight back. I have GOD and he is still with me, and I am faithful that the wrongs will be righted as

facts of discrimination

1C: Termination report

2C: Ending of long-term disability


4. Negligence

The Plaintiff has shown that from before he even knew he was going to ask for religious exemption that the Defendant signed an agreement with his Union CKM has shown that it is a fact that the Defendant did not have any interaction with him even when he was begging so it is a fact that they discriminated against him by the terms of their very agreement and by that alone forcing by fear of homelessness, food, livelihood coercion, made CKM take the medical treatment that caused the adverse reaction that has been a part of his life as painful neuropathy in his legs since two weeks after the treatment or 11-04-2021 that Defendant forced CKM to take.

Fact Negligence

1D: Definition of Negligence


WHEREFORE, Plaintiff respectfully requests and Prays that this Court enter summary judgment in his favor on all claims, and award damages, costs, and any further relief the Court deems just and proper.


Dated: June 9 2023


CHRISTOPHER K MCNEILL

2200 SW 7TH AVE #602

806-410-6215

cmcneill0114@gmail.com




Attachments:

# What is negligence?

Negligence is when someone fails to use reasonable care, either by acting in a way that a reasonably careful person w not act or by failing to act in a way that a reasonably careful person would under similar circumstances.

## How to Prove Causation in Negligence

1. Establish a duty of care.
2. Demonstrate a breach of that duty of care.
3. Show causation between this breach and your injury.
4. Prove that negligence resulted in damages.

1. The Defendant owe's all employees a duty to do no harm
   I could be argued the HR Manager owed a Fiduciary Duty as well.

2. Defendant breached that duty by not accommodating CKM
   and not even having a Conversation about the bargained agreement
   Defendant only offered the Nation Wide Policy same
   in Tennessee, Michigan. exc.

3. Direct + only Causation was forced Medical treatment,
   High B.P. + the Neuropathy

4. CKM has been injured, discriminated against,
   Intentionally hurt emotionally, Retaliated against
   and has pain in his legs severe to mild it
   is Life long. CKM has had Brain Scans/
   Nerve Conduction studies + his life will
   Never be Close to the same, All Do to
   The Defendant Negligence.