IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| CHRISTOPHER K. MCNEILL, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 2:23-CV-041-Z |
| TYSON FRESH MEATS, INC., | § § § | |
| Defendant | § § | |

**DEFENDANT'S SUR-REPLY IN OPPOSITION TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Sherry L. Travers
Texas State Bar No. 00793097
stravers@litter.com
Ross G. Reyes
Texas State Bar No. 24105707
rgreyes@littler.com

LITTLER MENDELSON, P.C.
2001 Ross Avenue, Suite 1500
Dallas, TX 75201
214.880.8100
214.880.0181 (Fax)

**ATTORNEYS FOR DEFENDANT
TYSON FRESH MEATS, INC.**

**TABLE OF CONTENTS**

**PAGE**

I. SUMMARY OF SUR-REPLY ................................................................................................. 1

II. RESPONSE TO PLAINTIFF'S SUPPLEMENTQAL DOCUMENTS ........................... 2

    *i.* *Plaintiff's Claims of Religious Discrimination Remain Meritless* ........................ 2

    *ii.* *Plaintiff Is Unable to Demonstrate He Is Entitled to Judgment as a Matter of Law on His Claim of Retaliation* ........................................................................ 4

    *iii.* *Plaintiff's Intentional Infliction of Emotional Distress and Negligence Claims Remain Futile* ................................................................................................ 4

III. DISCUSSION AND ANALYSIS OF *GROFF* ................................................................. 5

    A. Overview of *Groff* ................................................................................................ 5

    B. *Groff* Inapplicable to Plaintiff's Claims as Plaintiff Complied with Tyson's Vaccine Mandate ................................................................................................ 5

    C, Even if Applicable, Tyson Demonstrated the Existence of an Undue Hardship as Described in *Groff* ................................................................................................ 6

IV. CONCLUSION ................................................................................................................... 9

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aukamp-Corcoran v. Lancaster Gen. Hosp.*,
  No. 19-5734, 2022 WL 507479 (E.D. Pa. Feb. 18, 2022) ...........................................................8

*Barrington v. United Airlines, Inc.*,
  566 F. Supp. 3d 1102 (D. Colo. 2021)........................................................................................8

*Creger v. United Launch All. LLC*,
  571 F. Supp. 3d 1256 (N.D. Ala. 2021) .....................................................................................8

*Dennison v. Bon Secours Charity Health Sys. Med. Grp., P.C.*,
  2023 WL 3467143 (S.D.N.Y. May 15, 2023) ............................................................................8

*EEOC v. Abercrombie & Fitch Stores, Inc.*,
  135 S. Ct. 2028 (2015)............................................................................................................3, 4

*Groff v. DeJoy*,
  143 S. Ct. 2279 (2023) (Dkt. #37) ...............................................................................1, 5, 6, 7

*O'Hailpin v. Hawaiian Airlines, Inc.*,
  583 F. Supp. 3d. 1294 (D. Haw. 2022) ......................................................................................8

*Smith v. United Refining Co.*,
  1980 WL 98 (W.D. Pa. Jan. 30, 1980).......................................................................................7

*Trans World Airlines, Inc. v. Hardison*,
  432 U.S. 63 (1977).....................................................................................................................5

*Wren v. T.I.M.E.-D.C., Inc.*,
  595 F.2d 441 (8th Cir. 1979) ........................................................................................2, 3, 5, 7

Pursuant to the Court's Order (Dkt. #37), Defendant Tyson Fresh Meats, Inc. ("Tyson") files this Sur-Reply in Opposition to Plaintiff's Motion for Summary Judgment (Dkt. #18) and Brief in Support (Dkt. #19), as well as Plaintiff's supplemental filings and exhibits filed in support of his Motion for Summary Judgment (Dkt. #19, 20, 23, 35, 36) (collectively, "Motion"), and in support thereof shows as follows:[1]

## I.
## SUMMARY OF SUR-REPLY

On July 21, 2023, Plaintiff filed a Motion for Leave to Supplement the Evidentiary Record (Dkt. #35), wherein Plaintiff appeared to request that the Court consider documents improperly attached to Plaintiff's reply in support of his Motion (Dkt. #28) and filed separately six days after his reply (Dkt. #29) (collectively, "Supplemental Documents"). On August 4, 2023, the Court granted Plaintiff's Motion for Leave (Dkt. #35) and ordered Tyson to file a sur-reply responding to Plaintiff's Supplemental Documents and addressing the United States Supreme Court's holding in *Groff v. DeJoy*, 143 S. Ct. 2279, 2286 (2023) (Dkt. #37).

Plaintiff's Supplemental Documents fail to satisfy Plaintiff's evidentiary burden to show he is entitled to judgment as a matter of law on each of the five causes of actions asserted in his Original Complaint. Further, the Supreme Court's holding in *Groff* is inapplicable to the instant matter and fails to provide any support to Plaintiff's claims. Accordingly, the Court should deny Plaintiff's Motion for Summary Judgment.

---

[1] On August 8, 2023, Plaintiff filed a motion for leave to file an amended complaint (Dkt. #38). Subsequently, on August 10, 2023, Plaintiff filed a motion for leave to supplement the evidentiary record (Dkt. #39). In an effort to comply with the subject matter limitations within the Court's Order (Dkt. #37), Tyson will respond to Plaintiff's filings under a separate cover as opposed to addressing same herein.

1

## II.
## RESPONSE TO PLAINTIFF'S SUPPLEMENTAL DOCUMENTS

The Court should not consider Plaintiff's Supplemental Documents as they are inadmissible and fail to comply with the Federal Rules of Evidence.[2] Nevertheless, assuming Plaintiff's Supplemental Documents are admissible evidence, said documents fail to satisfy Plaintiff's evidentiary burden demonstrating that he is entitled to judgment as a matter of law. Specifically, the Supplemental Documents fail to provide any explanation, argument, or legal authority demonstrating how that information conclusively establishes as a matter of law each and every element of Plaintiff's claims.

    *i.*    *Plaintiff's Claims of Religious Discrimination Remain Meritless.*

Plaintiff remains unable to establish a *prima facie* case as he cannot satisfy the fourth element, an adverse employment action for failing to comply with a conflicting employment requirement, *i.e.*, the Policy. Because Plaintiff complied with the employment requirement—the Policy—which allegedly conflicted with his purported religious belief, any adverse employment action cannot logically be tied to Plaintiff's failure to abide by the Policy when no such failure exists.

Although unclear, it appears from one of Plaintiff's email communications that he argues an adverse employment action is not required to establish a claim of religious discrimination. *See* (Dkt. #29, at p. 4). Plaintiff is mistaken.

A "freestanding" religious accommodation claim alleges there is an independent duty under Title VII to provide employees with reasonable religious accommodations, so that a failure or refusal to provide an accommodation is, by itself, a violation of the statute. The Supreme Court

---

[2] Tyson incorporates by reference its Objections to Plaintiff's Supplemental Documents. *See* (Dkt. #34, at Section III.B.).

confirmed in *EEOC v. Abercrombie & Fitch Stores, Inc.*, 135 S. Ct. 2028 (2015), that there is no independent, "freestanding" cause of action under Title VII based on a failure or refusal to provide a religious accommodation. The Supreme Court explained that a "disparate treatment" claim and a "disparate impact" claim "are the only causes of action under Title VII." *Id.* at 2031–32. The statute's disparate treatment provision makes it unlawful "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion." *Id.* (citing 42 U.S.C. § 2000e-2(a)(1)). As explained by the Supreme Court, the term "because of" in the disparate treatment provision "links the forbidden consideration [*i.e.*, religion, including a person's religious beliefs and practices] to each of the verbs preceding it [*i.e.*, failing or refusing to hire, discharging, or otherwise discriminating with respect to compensation, terms, conditions, or privileges of employment]." *Id.* at 2032. Thus, "the rule for disparate-treatment claims based on a failure to accommodate a religious practice is straightforward: An employer may not make an applicant's religious practice, confirmed or otherwise, a factor in employment decisions." *Id.* at 2033 (emphasis added).

Justice Alito and Justice Thomas issued separate opinions in *Abercrombie*, and both Justices agreed with the majority that an accommodation claim must be tied to an adverse employment action. *See* 135 S. Ct. at 2034 (Alito, J., concurring), 2038 (Thomas, J., concurring in part and dissenting in part). Justice Thomas, in fact, observed that "many lower courts ... [have] wrongly assumed Title VII creates a freestanding failure-to-accommodate claim." *Id.* at 2041. The error, he noted, "appears to have grown out of statements in our [previous] cases suggesting that Title VII's definitional provision concerning religion created an independent duty [to

3

accommodate]." The Court's decision in *Abercrombie*, he explained, "rightly puts to rest the notion that Title VII creates a freestanding religious-accommodation claim." *Id.*

Based on the foregoing, to the extent Plaintiff attempts to asserting a freestanding religious accommodation claim, such an attempt is futile and should be rejected.

>    ii.    *Plaintiff Is Unable to Demonstrate He Is Entitled to Judgment as a Matter of Law on His Claim of Retaliation.*

As discussed in Tyson's Motion to Dismiss, Plaintiff's claim for retaliation fails because Plaintiff did not exhaust his administrative remedies. *See* (Dkt. #22, at pp. 9–10). Specifically, in his Charge of Discrimination, Plaintiff neither checked the appropriate "retaliation" box nor included any mention or discussion of retaliation within his "discrimination statement." On this basis alone, the Court should deny Plaintiff's Motion as it relates to his retaliation claim. Setting aside the foregoing, Plaintiff's retaliation claim remains futile as nothing within Plaintiff's Supplemental Documents remedies Plaintiff's inability to conclusively establish that Tyson's termination of Plaintiff's employment would not have occurred *but for* any alleged protected activity engaged in by Plaintiff. The lack of credible supporting evidence is fatal to Plaintiff's retaliation claim.

>    iii.   *Plaintiff's Intentional Infliction of Emotional Distress and Negligence Claims Remain Futile.*

Plaintiff's Supplemental Documents do not modify the ultimate outcome that Plaintiff's intentional infliction of emotional distress ("IIED") and negligence claims are preempted due to both claims being duplicative of Plaintiff's Title VII claims. *See* (Dkt. #25, at p. 13–14) (collecting cases). Moreover, Plaintiff's Supplemental Documents do not demonstrate the existence of a "gap" to be filled by Plaintiff's IIED claim. Further, the Supplemental Documents, as it relates to Plaintiff's negligence claim, fail to demonstrate an actionable legal duty in relation to any alleged

4

injuries or harm sustained by Plaintiff as a result of the COVID-19 vaccine. Accordingly, the Court should deny Plaintiff's Motion as it relates to his claims of IIED and negligence.

## III.
## DISCUSSION AND ANALYSIS OF *GROFF*

### A.     Overview of *Groff*

In *Groff*, the Supreme Court revisited the precedent it set in *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63 (1977), after which the "more than a *de minimis* cost" test became "the authoritative interpretation of the statutory term 'undue hardship.'" *Groff*, 143 S. Ct. at 2291–92. In revisiting *Hardison*, the Court in *Groff* held that "*Hardison* cannot be reduced to that one phrase," *i.e.*, "more than a *de minimis* cost," because "[i]n describing an employer's 'undue hardship' defense, *Hardison* referred repeatedly to 'substantial' burdens." *Id.* at 2294. Thus, the *Groff* Court clarified the oft-quoted "*de minimis* cost" language does not define the standard for finding an undue hardship; rather, *Hardison* stands for the proposition "'undue hardship' is shown when a burden is substantial in the overall context of the employer's business." *Id.* In reaching this conclusion, the Supreme Court made clear that *Groff* does not represent a departure from *Hardison*'s undue hardship standard, but rather, "clarif[ies] what Title VII requires." *Id.* at 2286.

### B.     *Groff* Is Inapplicable to Plaintiff's Claims as Plaintiff Complied with Tyson's Vaccine Mandate.

Whether an accommodation poses an undue burden is only relevant when there is an accommodation at issue. Here, once Plaintiff complied with the Policy, the need for an accommodation from the Policy became unnecessary.

Plaintiff originally objected to Tyson's Policy as Plaintiff claimed it violated his religious beliefs. At that point, the analysis in *Groff* of whether said accommodation created an undue hardship on Tyson was relevant. However, shortly after submitting his religious accommodation

5

exemption, Plaintiff voluntarily received the COVID-19 vaccine to which he originally objected. Because Plaintiff complied with Tyson's Policy, he no longer required an accommodation. Stated differently, Plaintiff's receipt of the COVID-19 vaccine in compliance with Tyson's Policy rendered Plaintiff's request for an accommodation from said Policy moot. Because Plaintiff complied with Tyson's Policy, which rendered Plaintiff's requested accommodation unnecessary, the analysis of whether Plaintiff's accommodation created an undue hardship is not an issue. Put simply, when there is no accommodation to be had, the analysis provided in *Groff* is irrelevant.

Based on the foregoing, *Groff* is inapplicable to Plaintiff's claims and fails to provide any support for Plaintiff's Motion. Accordingly, denying Plaintiff's Motion remains warranted.

**C.    Even if Applicable, Tyson Demonstrated the Existence of an Undue Hardship as Described in *Groff*.**

Although the analysis described in *Groff* is irrelevant due to Plaintiff's compliance with Tyson's Policy, should the Court find *Groff* is applicable, Plaintiff's Motion remains meritless.

In satisfying its burden of showing undue hardship, Tyson demonstrated that "the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of [Tyson's] particular business." *Id.* at 2295. Although the Supreme Court did not define "substantial increased costs," it stressed the importance of a case-by-case analysis and stated courts "must apply the test in a manner that takes into account all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, size and operating cost of [an] employer." *Id.*

In his position as Maintenance Generalist, Plaintiff worked in close proximity to other Tyson employees. By remaining unvaccinated and potentially exposing other Tyson employees to COVID-19, Plaintiff's unvaccinated status would have materially increased the risk of production shutdowns inevitably costing Tyson millions of dollars. In 2020, Tyson temporarily

6

closed plants in Waterloo, Iowa, Perry, Iowa, Logansport, Indiana, Pasco, Washington, and Dakota City, Nebraska, as a result of the COVID-19 pandemic.[3] Permitting unvaccinated employees to work, inevitably resulting in plants continuously shutting down, clearly creates a burden that is more than sufficient to raise the "undue hardship" defense. *See, e.g.*, *Smith v. United Refining Co.*, 1980 WL 98, at *6, 10 (W.D. Pa. Jan. 30, 1980) (undue hardship exists if accommodation would "expos[e] [employer] to a substantial risk of costly delays" and "substantial monetary losses resulting from delays caused by [employee]'s absence"); *Wren v. T.I.M.E.-D.C., Inc.*, 595 F.2d 441, 443, 445 (8th Cir. 1979) (undue hardship exists if accommodation would cause "foreseeable" unavailability that "may result in delay" at additional cost).

In addition to potential economic costs associated with plant shutdowns, Plaintiff's accommodation would have resulted in grave safety concerns. *Groff* was not a COVID-19 vaccination case. Critically, at the point in time in which Tyson considered implementing its Policy, millions of Americans tested positive for COVID-19, and hundreds of thousands of individuals died as a direct result of COVID-19. *See* COVID Data Tracker Weekly Review: Interpretative Summary for July 30, 2021, https://stacks.cdc.gov/view/cdc/108434.

In *Groff,* the Supreme Court emphasized that "a good deal of the EEOC's guidance in this area is sensible and will, in all likelihood, be unaffected by our clarifying decision today." *Id*. at 2296. Tyson refers the court to EEOC guidance on the topic of undue hardship issued in 2021 in connection with the COVID-19 pandemic. *See* What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws, https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws. Therein, the EEOC

---

[3] *See* Tyson Fresh Meats Temporarily Pausing Production at Dakota City, Neb., Beef Plant, https://www.tysonfoods.com/news/news-releases/2020/4/tyson-fresh-meats-temporarily-pausing-production-dakota-city-neb-beef (providing a summary of the various Tyson plants throughout the United States temporarily shutting down in 2020).

explains that "[c]osts to be considered include not only direct monetary costs but also the burden on the conduct of the employer's business-including, in this instance, the risk of the spread of COVID-19 to other employees or to the public." *Id.* at L.2–L.3

Numerous courts around the country analyzing employer vaccine mandates consider the safety and health risks that unvaccinated employees pose to other individuals as part of the undue hardship analysis. *See, e.g.*, *Aukamp-Corcoran v. Lancaster Gen. Hosp.*, No. 19-5734, 2022 WL 507479, at *6–*8 (E.D. Pa. Feb. 18, 2022) (granting employer's motion for summary judgment and holding "an employer is not required to grant a proposed accommodation that would either cause or increase safety risks or the risk of legal liability for the employer" as permitting even one more unvaccinated employee "increases the risk that vaccine-preventable disease will spread"); *O'Hailpin v. Hawaiian Airlines, Inc.*, 583 F. Supp. 3d 1294, 1309–10 (D. Haw. 2022) (finding unlikelihood of success on the employees' Title VII claim due to the undue hardship created by "the increased risk that unvaccinated employees in close quarters pose to other employees" and the difficulty of scheduling unvaccinated employees); *Barrington v. United Airlines, Inc.*, 566 F. Supp. 3d 1102, 1109 (D. Colo. 2021) (finding plaintiffs not likely to prevail on Title VII claim because unvaccinated employees are "the greatest risk of transmission of COVID-19" by threatening the lives of their vaccinated coworkers through "break-through cases"); *Creger v. United Launch All. LLC*, 571 F. Supp. 3d 1256, 1264 (N.D. Ala. 2021) (denying preliminary injunction of an employer's COVID-19 vaccine mandate partly because it caused the employer undue hardship in creating a healthy and safe workplace); *Dennison v. Bon Secours Charity Health Sys. Med. Grp., P.C.,* 2023 WL 3467143, at *6 n.7 (S.D.N.Y. May 15, 2023) ("there is also the obvious hardship associated with the increased health and safety risk posed to other employees . .

8

. by allowing Plaintiffs to remain unvaccinated, . . . and the risk of civil liability to anyone infected by an unvaccinated employee").

From the very start of the COVID-19 pandemic, Tyson endeavored to stay ahead of the curve by following CDC guidance, including social distancing, disinfecting surfaces, and enforcing a face mask policy. As a continuation of these mitigation measures, and given the CDC's vaccine recommendation and employee concerns regarding working in proximity to unvaccinated employees, Tyson implemented its Policy. Ultimately, when considering Plaintiff's request to be exempt from the Policy (and thus remain unvaccinated while continuing to work in close proximity with other employees), Tyson determined accommodating Plaintiff's request would inevitably jeopardize the safety of its employees because the nature of Tyson's business requires onsite presence.

## IV. CONCLUSION

WHEREFORE, PREMISES CONSIDERED, Tyson respectfully prays that the Court deny Plaintiff's Motion for Summary Judgment and Brief in Support.

9

Dated: August 11, 2023　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　*/s/ Sherry L. Travers*
　　　　　　　　　　　　　　　　　　　　　　Sherry L. Travers
　　　　　　　　　　　　　　　　　　　　　　Texas State Bar No. 00793097
　　　　　　　　　　　　　　　　　　　　　　stravers@litter.com
　　　　　　　　　　　　　　　　　　　　　　Ross G. Reyes
　　　　　　　　　　　　　　　　　　　　　　Texas State Bar No. 24105707
　　　　　　　　　　　　　　　　　　　　　　rgreyes@littler.com

　　　　　　　　　　　　　　　　　　　　　　LITTLER MENDELSON, P.C.
　　　　　　　　　　　　　　　　　　　　　　2001 Ross Avenue, Suite 1500
　　　　　　　　　　　　　　　　　　　　　　Dallas, TX 75201
　　　　　　　　　　　　　　　　　　　　　　214.880.8100
　　　　　　　　　　　　　　　　　　　　　　214.880.0181 (Fax)

　　　　　　　　　　　　　　　　　　　　　　**ATTORNEYS FOR DEFENDANT**
　　　　　　　　　　　　　　　　　　　　　　**TYSON FRESH MEATS, INC.**

## CERTIFICATE OF SERVICE

　　　　On August 11, 2023, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the Case Management/Electronic Case Filing (CM/ECF) system, which served the foregoing document to Plaintiff, proceeding *pro se*:

　　　　Christopher K. McNeill
　　　　2200 SW 7th Ave., Apt. 602
　　　　Amarillo, Texas 79106
　　　　cmcneill0114@gmail.com
　　　　***Pro Se Plaintiff***

　　　　　　　　　　　　　　　　　　　　　　*/s/ Sherry L. Travers*
　　　　　　　　　　　　　　　　　　　　　　Sherry L. Travers

10