IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRCIT OF TEXAS
AMARILLO DIVISION

CHRISTOPHER K. MCNEILL,

      Plaintiff,

v.

TYSON FRESH MEATS, INC.,

      Defendant.

2:23-CV-041-Z

## OPINION AND ORDER

Before the Court is Defendant's Motion to Dismiss Plaintiff's Original Complaint ("Defendant's Motion") (ECF No. 21). Having considered the Motion, pleadings, and relevant law, the Motion is **GRANTED IN PART** and **DENIED IN PART**.

### BACKGROUND

Plaintiff, proceeding *pro se*, is a former maintenance employee of Tyson Fresh Meats, Inc. ("Defendant") in its Amarillo, Texas plant. ECF No. 3 at 4. Plaintiff alleges religious discrimination and retaliation under Title VII of the Civil Rights Act of 1964 and negligence and intentional infliction of emotional distress ("IIED") under Texas law. *See id.* at 4, 8–9. He claims he was denied a reasonable accommodation from Defendant's COVID-19 vaccination policy, which allegedly conflicted with his sincerely-held religious beliefs. Specifically, Plaintiff alleges Defendant's "reasonable" accommodation was really no accommodation at all.

Defendant's policy afforded an objecting employee up to one-year of unpaid leave. After the expiration of that time, an unvaccinated employee would be terminated unless Defendant retracted the policy. If an employee did not accept leave, he would be terminated immediately.

Plaintiff asserted a religious objection, requested a reasonable accommodation, and was denied any accommodation other than the leave of absence framework.

Plaintiff's objection to the COVID-19 vaccine is based on a long-held personal religious belief that he should not "take any vaccines." ECF No. 27 at 16. This religious belief originated in April 2010, following his wife's tragic suicide. He explains:

> That changed me as it would anyone. I turned to God/Jesus at that time. I didn't get my 4 month old daughter any vaccines after that nor my son that was turning 4 in 4 days. I haven't had a flu vaccine or any vaccine since that day as I believe that my God given blood is the only immune system I or my children need.

ECF No. 27 at 16. Plaintiff states that taking "any" vaccine would cause him to "feel as if [he] is going against [his] faith, [his] God." *Id.*

On October 5, 2021, in response to a new COVID-19 vaccination requirement, Plaintiff submitted a request to Defendant's human resources department ("HR Department") for an accommodation on the basis that taking *any* vaccine would violate his strongly held religious beliefs. ECF No. 3 at 7. Defendant offered unpaid leave for up to one year, followed by termination unless Defendant rescinded the policy, or immediate termination. *Id.* Plaintiff attempted to discuss other possible accommodations — including outdoor labor — but was told there were no other options. *Id.* Plaintiff alleges this exchange violated the "interactive process" required under his union-negotiated employment contract. ECF Nos. 3 at 7, 19 at 1, 27 at 7–8. Further, Plaintiff claims that this take-it-or-leave-it offer was made to all employees who requested religious accommodations. ECF No. 3 at 5. Plaintiff alleges that Defendant's accommodation scheme was a predetermined punishment for employees requesting religious accommodation — not a genuine attempt to reasonably accommodate. *Id.*

On October 13, 2021, Plaintiff again requested a religious accommodation through Defendant's HR Department. *Id.* at 7 (naming John Trent Pontius). Notably, his second request

2

was *after* Texas Governor Abbott signed Executive Order GA-40 — banning public and private employers from requiring COVID-19 vaccination. *See* Executive Order GA-40, *Relating to Prohibiting Vaccine Mandates, Subject to Legislative Action* (Oct. 11, 2021) ("No entity in Texas can compel receipt of a COVID-19 vaccine by any individual, including an employee or a consumer, who objects to such vaccination for any reason of personal conscience, based on a religious belief, or for medical reasons, including prior recovery from COVID-19."). But Plaintiff's second request fared no better than his first. ECF No. 3 at 7. On the same day, Plaintiff also emailed Defendant's corporate public relations department and received no response. *Id.* (naming Derek Burlson); *see also* ECF No. 18 at 15.

Plaintiff argues that Defendant impermissibly pressured him to "choose between following the precepts of [his] religion and forfeiting benefits, on the one hand, and abandoning one of the precepts of [his] religion in order to accept work." *Sambrano v. United Airlines, Inc.*, 19 4th 839, 841 (5th Cir. 2021) (quoting *Sherbert v. Verner*, 374 U.S. 398, 404 (1963)) (Ho, J., dissenting from denial of injunction pending appeal) (*Sambrano I*); ECF No. 3 at 7–8. Plaintiff sought pastoral counsel and determined he had no choice but to get the vaccine. *Id.* On October 18, 2021, Plaintiff received the vaccine on the last day Defendant permitted its employees to become vaccinated. *Id.* at 8.

Plaintiff claims he suffered an adverse reaction to the vaccine and, when he returned to work, was sent home by the nurse on duty. *Id.* Plaintiff claims his medical condition deteriorated. *Id.* He never returned to work thereafter. *Id.* The Social Security Administration found that Plaintiff "became disabled under our rules on October 18, 2021" — the day he was vaccinated. ECF No. 36 at 2–3. He then filed a complaint with the Equal Employment Opportunity Commission

3

("EEOC") on November 3, 2021. *Id.* at 5. On December 14, 2022, the EEOC issued a "Right-to-Sue" letter. *See* ECF No. 18 at 26–27. Plaintiff was terminated the next day. ECF No. 3 at 9.

Thereafter, Plaintiff submitted an EEOC Charge of Discrimination. ECF No. 22 at 21–22.[1] Plaintiff timely filed this case on March 14, 2023. Defendant now moves for dismissal on all claims.

### LEGAL STANDARD

A district court deciding a motion to dismiss under Rule 12(b)(6) "must accept the plaintiff's factual allegations as true and resolve doubts as to the sufficiency of the claim in the plaintiff's favor." *Vulcan Materials Co. v. City of Tehuacana*, 238 F.3d 382, 387 (5th Cir. 2001). To survive a motion to dismiss, a complaint must allege enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Thus, a complaint's allegations "must make relief plausible, not merely conceivable, when taken as true." *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019).

"[T]he allegations of the *pro se* complaint" must be "held to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). However, "pro se plaintiffs must still plead factual allegations that raise the right to relief above the

---

[1] As discussed below, the basis of Plaintiff's case is not any physical injury allegedly caused by the vaccine, nor is termination the significant employment decision. Rather, it is Defendant's one-size-fits-all accommodation scheme that amounts to a realistic, drastic reduction in pay — alternative to termination — for any employee seeking a religious accommodation.

4

speculative level." *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) (per curiam). "A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6)." *Ackerman v. Bean Dredging LLC*, 589 F.3d 196, 209 (5th Cir. 2009) (internal marks omitted).

### ANALYSIS

### A. Plaintiff's Title VII Claims: Retaliation and Religious Discrimination

#### *1. Plaintiff exhausted his administrative remedies.*

As a threshold matter, "Title VII requires administrative exhaustion." *Davis v. Fort Bend Cnty.*, 893 F.3d 300, 307 (5th Cir. 2018). Here, Defendant argues Plaintiff failed to exhaust the requisite administrative remedies for his claims. ECF No. 22 at 9–12. But it is undisputed that Plaintiff timely filed a charge with the EEOC alleging religious discrimination, and that the EEOC issued a right-to-sue letter. *Id.* at 9–12, 21–22 (Plaintiff's EEOC charge); ECF No. 18 at 26–27 (EEOC Right-to-Sue Letter). Plaintiff initiated the present suit within ninety days. *See* 42 U.S.C. § 2000e-5(f)(1). Therefore, Plaintiff properly exhausted his administrative remedies prior to bringing his religious discrimination claim. However, Defendant contends that Plaintiff failed to exhaust his retaliation claim because he did not check the box marked "retaliation" on the Charge of Discrimination Form used to initiate the EEOC investigation. ECF No. 22 at 9–12.

This argument fails. "[A] cause of action for Title VII employment discrimination may be based, not only upon the specific complaints made by the employee's initial EEOC charge, but also upon any kind of discrimination like or related to the charge's allegations, limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination." *Fellows v. Universal Rests., Inc.*, 701 F.2d 447, 450–51 (5th Cir. 1983). "The scope of inquiry is not . . . limited to the *exact* charge brought to the EEOC," *Young v. City*

5

*of Hous., Tex.*, 906 F.2d 177, 179 (5th Cir. 1990); *see also Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 464 (5th Cir. 1970) (a plaintiff's complaint "is not restricted by [his] initial choice of boxes on the EEOC charge form"), much as "a Commission 'no reasonable cause' finding does not bar a lawsuit" on the same substance. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 799 (1973). Rather, "the civil action is much more intimately related to the EEOC *investigation* than to the words of the charge which originally triggered the investigation." *Sanchez*, 431 F.2d at 466 (emphasis added). Likewise, no investigation is even needed, so long as one "could reasonably be expected to grow from" the charge. *Fellows*, 701 F.2d at 450. This is because the underlying policies of Title VII "are not served by limiting judicial relief to technical niceties of the language used by an often unlettered or unsophisticated employee in filing his or her initial grievance with the EEOC." *Id.* (quoting *Gamble v. Birmingham S. R.R. Co.*, 514 F.2d 678, 689 (5th Cir. 1975)). "[T]he law does not require [a plaintiff] to expressly request an accommodation for a religious belief or practice in order for a Title VII violation to occur." *Carter v. Transp. Workers Union of Am., Loc. 556*, 602 F.Supp.3d 956, 965 (N.D. Tex. 2022) (*Carter I*) (internal marks omitted) (finding plaintiff's EEOC charge allegation that "my employer discriminated against me on the basis of my sincerely held religious beliefs and speech" was sufficient).

Here, Plaintiff alleges retaliation because he requested a religious accommodation from a company policy, received a credible threat of a substantial pay cut if he did not comply with the policy, and that threat was directly related to his accommodation request.[2] In his Charge of Discrimination Report, Plaintiff explained his request for an exemption and Defendant's response. ECF No. 22 at 21–22. Plaintiff alleges this was an "inflexible policy that allowed zero exceptions."

---

[2] *See infra, B. 1.*; *Brandon v. Sage Corp.*, 808 F.3d 266, 271 (5t Cir. 2015) ("[A] realistic, drastic pay cut threat might deter someone from supporting a discrimination charge in certain circumstances."); *Hamilton v. Dallas Cnty.*, 79 F.4th 494, 501–02 (5th Cir. 2023) (rejecting the long-standing requirement that adverse employment action must be a so-called "ultimate employment decision").

*Id.* He states, "I believe I was discriminated against because of my religious belief, in violation of Title VII of the Civil Rights Act of 1964, as amended." ECF No. 22 at 22. Plaintiff's allegations on his Charge of Discrimination Form are sufficient to put his other claims within the scope of an EEOC investigation. *Compare id. with Carter I*, 602 F.Supp.3d at 965 ("[M]y employer discriminated against me on the basis of my sincerely held religious beliefs and speech."). Therefore, Plaintiff's administrative remedies are exhausted.[3]

### 2. *Damages are subject to federal law caps.*

Plaintiff requests "damages, costs, and any further relief the Court deems just and proper." *See* ECF No. 18 at 33. Plaintiff has also requested amounts in excess of federal law caps. *See, e.g.*, ECF No. 3-1 (demanding $2,000,000.00). A Title VII complainant is generally permitted to recover backpay — and compensatory and punitive damages are also permitted, where appropriate. *See* 42 U.S.C. § 1981a. Title VII caps the amount of punitive and compensatory damages from an employer with "more than 500 employees" to "$300,000." 42 U.S.C. § 1981a; *see also Carter v. Transp. Workers Union of Am., Loc. 556*, 644 F.Supp.3d 315, 331 (N.D. Tex. 2022) (*Carter II*) (reducing compensatory and punitive award exceeding $4,000,000 to $300,000). Such damages compensate for "nonpecuniary losses" like emotional pain and mental anguish, 42 U.S.C. § 1981a(b)(3), and may include "self doubt," *Dotson v. U.S.*, 87 F.3d 682, 689 (5th Cir. 1996).

### 3. *Plaintiff states a prima facie case for retaliation.*

To establish a prima facie case of retaliation, a plaintiff must first produce evidence of: (1) his participation in a protected Title VII activity; (2) an adverse employment action by his

---

[3] Defendant also argues Plaintiff failed to exhaust his disability discrimination claims. ECF No. 22 at 10. But Plaintiff denies that he intended to bring an allegation of disability discrimination. *See* ECF No. 27 at 2–3. Plaintiff clarified that any mention of neuropathy or hypertension were merely descriptive of the alleged harm he suffered from the adverse reaction to the vaccine. *Id.* at 3. And Plaintiff denies that he intended to make a claim for failure to accommodate under the Americans with Disabilities Act. *See id.* at 1–4. Accordingly, the Court **DENIES** Defendant's Motion as moot in regards to these claims.

employer; and (3) a causal connection between the protected activity and the adverse action. *Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 427 (5th Cir. 2017). "This establishes the employee's prima facie case, and gives rise to an inference of retaliation." *Id.* (internal marks omitted).

The purpose of Title VII is "to protect the same rights in private employment as the Constitution protects." *Riley v. Bendix Corp.*, 464 F.2d 1114, 1116 (5th Cir. 1972). Further, Title VII "ensure[s] that employees [do] not have to sacrifice their jobs to observe their religious practices." *Sambrano v. United Airlines, Inc.*, 45 F.4th 877, 880 (5th Cir. 2022) (*Sambrano II*) (Ho, J., concurring) (citing *Adeyeye v. Heartland Sweeteners*, 721 F.3d 444, 456 (7th Cir. 2013)). In short, "[b]eing placed on indefinite unpaid leave because your employer doesn't like your religious beliefs is obviously an adverse employment action and an actionable claim under Title VII." *Id.* at 879. And an offer of "voluntary self-termination with the possibility of being rehired" is not a reasonable accommodation. *Adeyeye*, 721 F.3d at 455.

### i. *Plaintiff engaged in a protected activity.*

The first element of Plaintiff's prima facie case is satisfied. A Title VII retaliation claim is only viable if a plaintiff shows that he engaged in conduct protected by Title VII. *See* 42 U.S.C. § 2000e-3(a) (The protected activity requirement is met if a plaintiff "opposed any practice made an unlawful employment practice by [Title VII]" or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]."). "To satisfy the 'opposition clause,' [a plaintiff] need not prove that [his employer's] practices were actually unlawful, only that he had 'a reasonable belief that the employer was engaged in unlawful employment practices.'" *Khalfani v. Balfour Beaty Communities, LLC*, EP-12-CV-00422-DCV, 2014 WL 12530941, at *4 (W.D. Tex. Feb. 12, 2014), *aff'd*, 595 Fed. Appx. 363 (5th Cir. 2014)

8

(internal marks omitted). "[R]equesting religious accommodation is protected activity," as is opposing an allegedly unlawful denial of a religious accommodation.[4]

    *ii. Plaintiff was subjected to an adverse employment action.*

    The second element is also satisfied. To support a retaliation claim, "an employment action must be *materially* adverse." *Stewart*, 586 F.3d at 331 (emphasis added). This is because "Title VII does not permit liability for *de minimis* workplace trifles." *Harrison v. Brookhaven Sch. Dist.*, 82 F.4th 427, 431 (5th Cir. 2023) (quoting *Hamilton*, 79 F.4th at 505); *see also Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 72–73 (2006) (holding that an employee being forced to go 37 days without pay was materially adverse). The Supreme Court has held that an employment action is materially adverse when it would dissuade "a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006); *see also* EEOC, *Compliance Manual Section 12: Religious Discrimination* § 12-V.B (2021). And the Fifth Circuit has acknowledged that "a realistic, drastic pay cut threat might deter someone from supporting a discrimination charge in certain circumstances," which could "giv[e] rise to an actionable retaliation claim." *Brandon v. Sage Corp.*, 808 F.3d 266, 271 (5th Cir. 2015); *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 205 n.3 (5th Cir. 2016) (Higginbotham, J., concurring).[5]

---

[4] EEOC, *Compliance Manual Section 12: Religious Discrimination* § 12-V.B (2021); *see also id.* n.321 (disagreeing with the Eighth Circuit's holding in *EEOC v. N. Mem'l Health Care,* 908 F.3d 1098 (8th Cir. 2019), that religious accommodation is not protected activity because "the better interpretation of Title VII's antiretaliation provision is that requests for religious accommodations are protected activity under that provision as well."); *EEOC v. Rite Way Serv., Inc.*, 819 F.3d 235, 240 (5th Cir. 2016) (Internal complaints about an employment practice may constitute "protected activity" if the complainant "reasonably believed the employment practice to be unlawful."); *Ollis v. HearthStone Homes, Inc.*, 495 F.3d 570 (8th Cir. 2007) (upholding jury verdict finding that an employee's complaints about required participation in activities violate his religious beliefs constituted protected activity under Title VII); *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 190 (3rd Cir. 2003); *Dorantes v. Texas Tech Univ. Health Scis. Ctr.*, EP-02-CA-394-DB, 2003 WL 21474255, at *4 (W.D. Tex. June 23, 2003), *aff'd*, 88 Fed. Appx. 792 (5th Cir. 2004).

[5] The *Brandon* court did not explain what those "circumstances" might be because, in the case before it, "no reasonable jury would find that to be the case." 808 F.3d at 271. But the Court did provide some guidance by citing, *inter alia* and most on-point, *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 26 (2nd Cir. 2012) ("A reasonable juror could find both that [plaintiff's supervisor] threatened [plaintiff] with the loss of his job, and that this threat

The *Hamilton* case now guides this Court in finding "a realistic, drastic pay cut threat" amounts to a "materially adverse" employment action. *Brandon*, 808 F.3d at 271; *Stewart*, 586 F.3d at 331. For three decades, Fifth Circuit precedent "limited the universe of actionable adverse employment actions" — encompassing "disparate-treatment" — "to so-called ultimate employment decisions" including "hiring, granting leave, discharging, promoting, or compensating." [6] *Hamilton*, 79 F.4th at 497–498; *see also Dollis v. Rubin*, 77 F.3d 777, 781–82 (5th Cir. 1995), *abrogated by* 79 F.4th 494 (5th Cir. 2023) ("Title VII was designed to address ultimate employment decisions, not . . . every decision made by employers that arguably might have some tangential effect upon those ultimate decisions."). Because "[t]hat's not what the statute says — at all," the Fifth Circuit rejected that "atextual" "interpretive incongruity." *Hamilton*, 79 F.4th at 497, 501. "[A]n adverse employment action 'need only be a term, condition, or privilege of employment.'" *Id.* at *5 (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 77 (1984)). And "requiring [an employee] to work without religious accommodation where a work rule conflicts with his religious beliefs necessarily alters the terms and conditions of his employment for the worse." EEOC, *Compliance Manual Section 12: Religious Discrimination* § 12-IV.A (2021) (citing 42 U.S.C. § 2000e-2(a)(1)).

To summarize the post-*Hamilton* operative precedent: "[A] Title VII plaintiff may recover damages even for discrimination in the terms, conditions, or privileges of employment that did not

---

would dissuade a reasonable worker from making or supporting a charge of discrimination."). The *Brandon* trial court opined that "mere threats of pay reduction that never come to fruition would not dissuade a reasonable worker from making or supporting a charge of discrimination and . . . cannot constitute a materially adverse employment action." 61 F. Supp. 3d 632, 650 (W.D. Tex. 2014), *aff'd* 808 F.3d 266 (5th Cir. 2015). This case is clearly distinguishable because Plaintiff faced a substantial reduction in pay — indeed, a *complete* reduction — that was more than a "mere" threat, or alternatively "voluntary self-termination." *Adeyeye*, 721 F.3d at 455.

[6] While "granting leave" is a distinct category of actionable adverse employment actions, this Court does not construe Defendant's policy under that clause. Rather, the Court situates Defendant's policy under the statute's operative catchall provision prohibiting discrimination "with respect to [his] terms, conditions, or privileges of employment." 42 U.S.C. § 2000e-2(a)(1).

involve a discharge, loss of pay, or other concrete effect on his or her employment status." *Hamilton*, 79 F.4th at 501 (internal marks omitted). "Any benefits that comprise the incidents of employment, or that form an aspect of the relationship between the employer and employees . . . fall within Title VII's ban on discrimination." *Id.* (internal marks omitted). "[T]he phrase 'terms, conditions, or privileges' should be broadly construed." *Harrison*, 82 F.4th at 430 (applying *Hamilton* to a school district's refusal to pay an African-American woman's Leadership Academy fees while paying for similarly situated white males' fees). Thus, a "realistic, drastic pay cut threat" constitutes an adverse employment action if it is "material." *Accord Hamilton*, 79 F.4th at 499 (rejecting that Title VII applies only to ultimate employment decisions) *with Brandon*, 808 F.3d at 271 (entertaining possibility of a threat giving rise to an actionable claim) *and White*, 548 U.S. at 72–73 (holding 37 days without pay was materially adverse).

Defendant's only offered accommodation was a "leave of absence with no pay for a year then fired, or fired on the spot." ECF No. 3 at 5. Moreover, Defendant admits an employee raising a religious objection to receiving the vaccine had exactly three choices: (1) capitulate on his religious belief so to comply with the policy; (2) accept immediate termination; or (3) accept up to one-year unpaid leave until either the policy was rescinded, the employee complied, or the leave period expired — culminating in termination. ECF No. 25 at 7. None of the choices pass muster.

Defendant's "reasonable accommodation," in effect, placed Plaintiff between *two* rocks and a hard place. Instructing an employee that "[t]o keep your job, you must violate your faith" — by "abandon[ing] your religious conviction . . . irreversibly" — clearly fails Title VII. *Sombrano II*, 45 F.4th at 879 (Ho, J., concurring). It is also settled that "voluntary self-termination" — even "with the possibility of being rehired" — is not a reasonable accommodation. *Adeyeye*, 721 F.3d

11

at 455.[7] And option three is merely a punt — at best resulting in Defendant rescinding the policy and at worst delaying eventual termination or even coercing compliance contrary to a religious belief. The most viable option for a religious objector, therefore, was to accept a complete reduction in pay and *hope* Defendant rescinded the policy. Under *Hamilton*, this Court must find that Plaintiff alleges he suffered an adverse employment action sufficient to satisfy his prima facie burden.

### iii. There is a sufficient link nexus between the protected activity and adverse action.

Finally, the Court finds Plaintiff met his burden on the third element — at least at this motion to dismiss phase. The Fifth Circuit requires "but for" causation only "in the final, pretextual stage, rather than the prima facie stage." *Williams v. B R F H H Shreveport, L.L.C.*, 801 Fed. Appx. 921, 925 (5th Cir. 2020); *cf. Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013) ("Title VII retaliation claims must be proved according to traditional principles of but-for causation."); *see also Garcia v. Prof'l Contract Servs., Inc.*, 928 F.3d 236, 243 (5th Cir. 2019) ("*Nassar*'s heightened but-for causation requirement applies only in the third step (the pretext stage) of the *McDonnell Douglas* framework."); *Khalfani*, 2014 WL 12530941, at *9 (collecting cases). Temporal proximity "between an employee's protected activity and an adverse action against him may provide the causal connection required to make out a prima facie case of retaliation," *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997), but any evidence "beyond mere temporal proximity" should be considered at the prima facie stage as well. *Williams*, 801 Fed. Appx. at 925–26.

---

[7] While the defendant in *Adeyeye* "had the good sense to relegate this argument to a footnote," 721 F.3d at 456, this Defendant built a defense upon it. *See* ECF No. 22 at 6 ("Tyson provided reasonable accommodations to those team members who could not receive, or objected to receiving, the COVID-19 vaccine due to . . . a sincerely held religious belief. Specifically, Tyson accommodated employees by offering them the opportunity . . . with potentially up to one year of unpaid leave . . . .").

As to temporal proximity, the events are as close as could be. The threat of a significant pay cut was the immediate response to the request for religious accommodation. But other factors also support the causal link. Plaintiff argues Defendant's accommodation framework was a "predetermined illegal punishment for requesting a religious exemption" and Defendant refused to consider any other reasonable accommodation. *See id.* at 5, 7. Plaintiff supports his argument with specific factual allegations: Defendant refused to discuss any other accommodations; this was the only accommodation offered to all objecting employees company-wide; Defendant's HR manager was aware of Plaintiff's accommodation request at the time; and Defendant's HR manager told Plaintiff they knew what his accommodation would be before he asked. *See* ECF Nos. 3, 18, 19.

Moreover, even Defendant's pleadings indicate a close nexus. Defendant avers that it "provided reasonable accommodations to those team members who could not receive, or objecting to receiving, the COVID-19 vaccine due to, in part, a sincerely held religious belief." ECF No. 25 at 7. But as explained, the accommodation was *not* a reasonable one. It was, at best, a probable termination delayed, and at worst, an "unmistakable pressure to forego one's religious practice by forcing a worker to choose between following the precepts of [his] religion and forfeiting benefits, on the one hand, and abandoning one of the precepts of [his] religion in order to accept work." *Sambrano I*, 19 F.4th at 841 (Ho, J., dissenting). Thus, Plaintiff was subjected to the threat of a substantial reduction in pay, termination, or capitulation *because* he "objected to receiving" the vaccine due to his "sincerely held religious belief." ECF No. 25 at 7.

Plaintiff's argument that Defendant's accommodation framework was merely a "rubber stamp" denial — or constructive denial — is not unfamiliar. *See U.S. Navy SEALs 1-26 v. Biden*, 578 F.Supp.3d 822, 835 (N.D. Tex. 2022) ("The Navy provides a religious accommodation

13

process, but by all accounts, it is theater" and "merely rubber stamps each denial."). True, Defendant may have had ample reasons related to "safety and health risks" supporting its policy that its employees — or at least *certain* employees — be vaccinated. ECF No. 40 at 11. Importantly, the challenged employment action is not the vaccination *policy* itself; it is the blanket approach to *any* request for religious accommodation that amounted to a realistic, credible, and imminent threat of a complete loss of pay that is actionable. Plaintiff has sufficiently alleged a causal link between his protected activity and the adverse employment.

Therefore, Plaintiff's retaliation claim is not a "threadbare recital[] of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 663. He has carried his burden of proving a prima facie case of retaliation. Defendant's Motion to Dismiss Plaintiff's retaliation claim is **DENIED**.

### 4.  *Plaintiff states a prima facie case for religious discrimination.*

Failure to accommodate religious beliefs is religious discrimination. It is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment" because of such individual's religion. 42 U.S.C. § 2000e-2(a)(1). Employers must show that the burden to accommodate an employee's religious belief or practice would impose "a burden [that] is substantial in the overall context of an employer's business." *Groff v. DeJoy*, 600 U.S. 447, 468 (2023).[8]

---

[8] *Groff* held that "undue hardship" within the meaning of the Title VII requires a showing of more than "*de minimis*" cost — that is, "that an accommodation would impose some sort of additional cost." 600 U.S. at 469. Rather, the employer must show the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business. *Id.* at 470.

Defendant's initial arguments relied upon the former *de minimis* standard, *see, e.g.*, ECF No. 15 at 5, and so the Court ordered Defendant to file a sur-reply to present its arguments under the operative *Groff* framework. ECF No. 37. Defendant did so. *See* ECF No. 40.

A violation of Section 2000e-2(a)(1) is intentional discrimination, also known as "disparate treatment." *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 771 (2015). Hence, a claim of failure to accommodate religion is a claim of religious discrimination by "disparate treatment" because inadequate accommodation intentionally discriminates against a religious practice. *See id.* at 773–75. Additionally, "an employer who acts with the motive of avoiding accommodation may violate Title VII even if [it] has no more than an unsubstantiated suspicion that accommodation would be needed." *Id.* at 773. In *Abercrombie*, the Supreme Court held that Title VII does not limit religious disparate-treatment claims "to only those employer policies that treat religious practices less favorably than similar secular practices." *Id.* at 775. "Title VII does not demand mere neutrality with regard to religious practices — that they be treated no worse than other practices." *Id.* In other words, Title VII gives religious practice "favored treatment, affirmatively obligating employers not to fail or refuse to hire or discharge any individual because of such individual's religious observance and practice." *Id.* (internal marks omitted).[9]

To state a prima facie claim of religious discrimination under Title VII, vis-à-vis failure to accommodate, Plaintiff must satisfy the following elements: (1) he had a bona fide religious belief; (2) the belief conflicted with a requirement of his employment; (3) his employer was informed of his belief; and (4) he suffered an adverse employment action for failing to comply with the conflicting employment requirement. *Davis*, 765 F.3d at 485.

---

[9] That an employer refuses to accommodate *any* religious belief also fails Title VII. A policy that unlawfully discriminates against religious adherents — because they, *e.g.*, request accommodations for myriad sincerely held beliefs — is not permissible just because it is indiscriminate in its discrimination. That may well be the case here, as Defendant's accommodation framework amounts to an adverse employment action in response to any employee "who could not receive, or objected to receiving, the COVID-19 vaccine due to, in part, a sincerely held religious belief." ECF No. 25 at 7. That language is broad enough to encompass any objection, for any reason, and fails the high threshold required by *Abercrombie.*

15

An employer has a "statutory obligation to make reasonable accommodation for the religious observances of its employees, short of incurring an undue hardship." *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 75 (1977). Title VII requires an employer who denies a religious accommodation to defend that denial by showing something akin to an "excessive" or "unjustifiable" hardship, which may include "substantial additional costs" or "substantial expenditures." *Groff*, 600 U.S. at 469; *cf. Hardison*, 432 U.S. at 84 ("To require [employer] to bear more than a de minimis cost in order to [accommodate employee] is an undue hardship.").

Defendant claims that Plaintiff's case fails as to the first and last elements — that he lacks a bona fide religious belief and suffered no adverse employment action. ECF No. 22 at 16. Defendant is incorrect.

   *i.   Plaintiff pleads a sincere religious belief reflecting an honest conviction.*

In considering the sincerity of a person's religious beliefs, "each case turns on its particular facts." *Moussazadeh v. Tex. Dept. of Crim. Justice*, 703 F.3d 781, 792 (5th Cir. 2012). "[J]udicial inquiry into the sincerity of a person's religious belief must be handled with a light touch, or judicial shyness." *Id.* at 486 (internal marks omitted); *Thomas v. Rev. Bd.*, 450 U.S. 707, 714 (1981) ("The determination of what is a 'religious' belief or practice is more often than not a difficult and delicate task."). "The Supreme Court has made it clear that it is not a court's role to determine the reasonableness of an individual's beliefs." EEOC, *Compliance Manual Section 12: Religious Discrimination* § 12-I.A.1. (2021) (quoting *Thomas*, 450 U.S. at 714); *United States v. Ballard*, 322 U.S. 78, 86–87 (1944) ("Men may believe what they cannot prove. They may not be put to the proof of their religious doctrines or beliefs."). Indeed, courts must not "stray into the realm of religious inquiry, an area into which we are forbidden to tread." *Moussazadeh*, 703 F.3d at 792 (internal marks omitted). As applied to Title VII, plaintiffs "may not be put to the proof," but courts

16

must instead determine if an individual has "truly held" a religious belief. *United States v. Seeger*, 380 U.S. 163, 184–86 (1965). Indeed, sincerity "is rarely challenged." *Davis*, 765 F.3d at 486. Further, "claims of sincere religious belief in a particular practice have been accepted on little more than the plaintiff's credible assertions." *Davis*, 765 F.3d at 486; *see also Baker v. The Home Depot*, 445 F.3d 541, 547 (2nd Cir. 2006) ("[Plaintiff's] affidavit explaining the genesis of his belief . . . is sufficient evidence to create a jury question as to the validity of that belief.").

"The resolution of that question is not to turn upon a judicial perception of the particular belief or practice in question; religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection." *Id.* It is not for the Court to say his belief is "mistaken or insubstantial." *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 725 (2014). And "[t]he fact that no religious group espouses such beliefs or the fact that the religious group to which the individual professes to belong may not accept such belief will not determine whether the belief is a religious belief of the employee." EEOC, *Compliance Manual Section 12: Religious Discrimination* § 12-I.A.1. n.23 (2021) (citing *Commission Guidelines*, 29 C.F.R. § 1605.1); *Welsh v. United States*, 398 U.S. 333, 343 (1970) (finding petitioner's beliefs were religious in nature although the church to which he belonged did not teach those beliefs). The Court's "narrow function . . . is to determine whether [Plaintiff's belief] reflects an honest conviction." *Hobby Lobby*, 573 U.S. at 725. As always, "Title VII's intention is to provide protection and accommodation for a broad spectrum of religious practices and belief," and not "merely those beliefs based upon organized or recognized teaching of a particular sect." *Bushouse v. Local Union 2209*, 164 F. Supp. 2d 1066, 1076 n.15 (N.D. Ind. 2001); *see also Davis*, 765 F.3d at 486–87 (holding that an employee's religious belief was a genuine question of fact and the district court was incorrect to inquire into "the nature of the activity itself").

17

Here, Plaintiff plausibly alleges that he experienced a religious conversion more than thirteen years ago in which he formed the belief that his "God given blood is the only immune system [he] or [his] children need," and accordingly believes taking any vaccine is "against my faith, my God." ECF No. 27 at 16. Thereafter, and until the conflict at issue in this case, Plaintiff acted accordingly. *See* ECF No. 27 at 16 ("I haven't had a vaccine since 4-21-2010" and "didn't get my [children] any vaccines after that.").

Courts have recognized similar beliefs in the vaccine context. *See Navy SEALs*, 578 F.Supp.3d at 827–28. Objections to the COVID-19 vaccine based on religious beliefs fall into four categories: "(1) opposition to abortion and the use of aborted fetal cell lines in development of the vaccine; (2) belief that modifying one's body is an afront to the Creator; (3) direct, divine instruction not to receive the vaccine; and (4) opposition to injecting trace amounts of animal cells into one's body." *Id.* (internal marks omitted). Plaintiff's belief is most analogous to the second and third categories. *Compare* ECF No. 27 at 16 (stating Plaintiff's belief that *any* vaccine would compromise his religious belief) *with, e.g.*, No. 4:21-CV-01236-O, *U.S. Navy SEALs 1-26 v. Biden* ("*Navy SEALs* Docket"), ECF No. 17-6 at 18-19 ("I prayed about whether I should receive the COVID-19 vaccine" and "had a very strong, divine feeling that I should not get the COVID-19 vaccine."), 30–31 ("Through personal prayer, I have formed a sincerely held religious belief that the Lord is telling me not to take the vaccine."), *and* 40–41 ("In accordance with my sincerely held religious belief, I object to the COVID-19 vaccine because the use of mRNA to alter my body's natural function, I believe, defiles my body and is a violation of God's sovereignty and authority as my Creator.").[10]

---

[10] It bears repeating that evaluating the hermeneutical or theological basis of an asserted religious belief "lies on the forbidden side of the line." *Hobby Lobby*, 573 U.S. at 725. Instead, the Court only evaluates whether the "asserted religious belief reflects an honest conviction." *Id.*

18

Defendant avers that "generic and barebone allegations concerning his religious beliefs do not give [Plaintiff] blanket privilege to defy Tyson's lawful vaccine policy." ECF No. 22 at 16 (internal marks omitted). But the essential inquiry is whether Plaintiff's belief "reflects an honest conviction." *Hobby Lobby*, 573 U.S. at 725. As pleaded, Plaintiff's stated religious beliefs are consistent with the choices he made for himself and his children — for over a decade. ECF Nos. 3 at 4, 27 at 16. Notably, his vaccine-specific religious belief and practice long pre-date the relatively recent politicization of the so-called "anti-vax" movement that is so intimately tied with the COVID-19 vaccine. *Cf. Together Emps. v. Mass. Gen. Brigham, Inc.*, 573 F. Supp. 3d 412, 426–27 (D. Mass. 2021) (noting hospital committee that denied employee religious objections considered whether employees had received *prior* vaccines without objection). In fact, his personal revelation-based vaccine belief is more encompassing than others recognized by courts. *Compare* ECF No. 27 at 16 ("*[A]ny* vaccine is going to come between my faith and make me feel as if I am going against my faith, my God.") (emphasis added) *with Navy SEALs Docket*, ECF No. 17-6 at 19 ("After I prayed, I had a very strong, divine feeling . . . and if I were to take *this* vaccine, it would be against my beliefs and my relationship with God.") (emphasis added).

### ii. *Acts inconsistent with a stated belief do not necessarily defeat sincerity.*

Defendant contends that Plaintiff's "religious beliefs" were not sincere because he "acted in a manner inconsistent with [his] professed belief." ECF No. 22 at 16–17. The Court rejects this argument as necessarily dispositive. Inconsistent behavior, when viewed in the totality of the circumstances and is explained by the circumstances, is not definitive proof that an objecting employee's belief is insincere. *See Thomas*, 450 U.S. at 715; *Moussazadeh*, 703 F.3d at 792 ("[S]tray[ing] from the path of perfect adherence" does not negate sincerity).[11] In *Thomas*, the

---

[11] There are, of course, bulwarks in sincerity jurisprudence. In *McCrory v. Rapides Reg'l Med. Ctr.*, for example, the court held that adultery is not a religious belief that could be sincerely held. 635 F. Supp. 975 (W.D. La. 1986), *aff'd*

Supreme Court rejected an argument that a plaintiff's objection to working in a facility that produced armaments was inconsistent with prior work in the same facility producing sheet metal that may have been ultimately used in the production of armaments. *Id.* The Court stated, "[w]e see . . . that Thomas drew a line, and it is not for us to say that the line he drew was an unreasonable one." *Id.* Plaintiff similarly drew a line that accounts for myriad religious, moral, and ethical factors. *See* ECF No. 27 at 5 (explaining why, after praying with his pastor, he took the vaccine). Consistent with *Thomas*, *Moussazadeh*, *Hobby Lobby*, and *Navy SEALs*, this Court finds that Plaintiff's stated religious belief reflects "an honest conviction." 573 U.S. at 725 (internal marks omitted).

Defendant specifically contends that because "Plaintiff received the very vaccine he claims his religious beliefs prohibited him from receiving," his belief must not be sincere. ECF No. 22 at 17. That is incorrect. "An employee does not cease to be discriminated against because he temporarily gives up his religious practice and submits to the employment policy." *E.E.O.C. v. Townley Eng'g & Mfg. Co.*, 859 F.2d 610, 614 n.5 (9th Cir. 1988). Nor does the Fifth Circuit require "perfect adherence." *Moussazadeh*, 703 F.3d at 792 (A "few lapses in perfect adherence" failed to "negate his overarching display of sincerity.").

Notwithstanding, Plaintiff received *zero* vaccines in the eleven years since his religious conversion. ECF No. 27 at 16. Neither did he permit his minor children to be vaccinated since that time. *Id.*; *cf. Together Employees*, 573 F. Supp. 3d. 412. Plaintiff's behavior exhibits consistent faithfulness to "an honest conviction." *Hobby Lobby*, 573 U.S. at 725. The challenged "inconsistent" action — when viewed in the context of "no jab, no job" and occurring after he sought pastoral counsel and engaged in prayerful contemplation of his competing obligations as

---

801 F.2d 396 (5th Cir. 1986). Hypocrisy may be relevant, but only in relation to one's personal motivations. And, notably, *McCrory* does not implicate employer pressure to violate one's beliefs.

provider — can hardly be written off as inconsequential or undisciplined. *See* ECF No. 22 at 16–
17; *Sambrano I*, 19 F.4th at 841 (Ho, J., dissenting) (citing *BST Holdings, L.L.C. v. OSHA*, 17 F.4th
604, 618 (5th Cir. 2021)). Prayer and pastoral counsel evince a religious adherent who must
"wrestle with self-doubt — questioning whether his faith has hurt his family, and whether living
up to his commitments was worth sacrificing the interests of his loved ones." *Sambrano I*, 19 F.4th
at 842 (Ho, J., dissenting). Moreover, evidence or pressure from officials or other authorities on
an adherent to act in a way that violates his religious beliefs *enhances*, not diminishes, claims of
religious discrimination. *Moussazadeh*, 703 F.3d at 793. Under *Davis*, testimony of an adherent's
sincerity alone is sufficient to support inference in his favor. And under *Moussazadeh*, proof of
capitulation under pressure is not only insufficient but also *underscores* religious discrimination.[12]

Additionally, Defendant "refers to the [C]ourt to EEOC guidance" from 2021 in connection
with the COVID-19 pandemic. *See* ECF No. 40 at 10 (citing What You Should Know About
COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws,
ttps://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-
and-other-eeo-laws ("EEOC Guidance: What You Should Know")). Therein, the EEOC cautions
"the employer should ordinarily assume that an employee's request for religious accommodation

---

[12] To hold that capitulation is dispositive of *sincerity* would run afoul of several First Amendment principles codified
in Title VII, RFRA, and other coda. *Compare Thomas*, 450 U.S. at 714 ("The determination of what is a 'religious'
belief or practice is more often than not a difficult and delicate task.") *with Little Sisters of the Poor Saints Peter &
Paul Home v. Pennsylvania,* 140 S. Ct. 2367, 2383 (2020) ("[W]e made it abundantly clear that, under RFRA, the
Departments must accept the sincerely held complicity-based objections of religious entities. That is, they could not
'tell the plaintiffs that their beliefs are flawed' because, in the Departments' view, 'the connection between what the
objecting parties must do . . . and the end that they find to be morally wrong . . . is simply too attenuated.'") (citing
*Hobby Lobby*, 573 U.S. at 723-24 (2014)) *and* Stephanie N. Phillips*, A Text-Based Interpretation of Title VII's
Religious-Employer Exemption*, 20 Tex. Rev. L. & Pol. 295, 302 (2016).

For example, a person who discerns that the Principle of Double-Effect permits a certain act, does not lose his objection
to having been subjected to the moral dilemma in the first place. There are degrees between the "pay-under-protest"
complainant and the "noisy exit" whistleblower, and not every religious objector must commit to the latter option.
Defendant's argument invites this Court to become involved in the material matters of Plaintiff's religion. Indeed, the
analysis would compel the Court to adjudicate based upon Plaintiff's theology. This the Court cannot do.

21

is based on a sincerely held religious belief, practice, or observance" unless "an employer is aware of facts that provide *an objective basis* for questioning either the religious nature or the sincerity of a particular belief, practice, or observance" — in which case "the employer would be justified in requesting additional supporting information." EEOC Guidance: What You Should Know, Title VII and Covid-19 Vaccinations, K.12 (updated May 28, 2021). The basis for questioning Plaintiff's belief — that he eventually received the vaccine — occurred long after Defendant denied his religious accommodation requests. That is, on its face, a post hoc rationalization of Defendant's denial decision. *See Runkel v. City of Springfield*, 51 F.4th 736, 745 (7th Cir. 2022) (rejecting employer's post hoc rationalization). That Plaintiff eventually took the vaccine could not have possibly been a reason for Defendant's earlier decision to deny Plaintiff a reasonable accommodation.

Defendant now seeks dismissal because Plaintiff, in the "choice between [his] job and [the] jab," chose his job. *Sambrano*, 19 F.4th at 841 (Ho, J., dissenting). At least at this motion to dismiss phase, dismissal on that ground must be denied.

### iii. *Plaintiff pleads an adverse employment action.*

Regarding an adverse employment action: Defendant avers that Plaintiff complied with the employment requirement before the deadline and therefore "any adverse employment action cannot logically be tied to Plaintiff's failure to abide by the Policy when no such failure exists." ECF No. 22 at 17. But as the Court has already explained, the leave of absence scheme amounted to a realistic, drastic pay cut threat such that it was an adverse employment action. *See supra*, B.1. And moreover, the Fifth Circuit's rejection of the "atextual ultimate employment decision gloss" guides the Court in that conclusion. *Hamilton*, 79 F.4th at 502. Defendant responded to Plaintiff's request for accommodation with an offer to reduce his pay *completely* for up to one year and then

22

— if Plaintiff had not complied with the policy or Defendant had not rescinded the policy— he would then be terminated. His alternative options were immediate termination or compliance with the objected-to policy contrary to his religious belief. Thus, Plaintiff has alleged that he suffered an adverse employment action.

Therefore, Plaintiff has plead a prima facie case for religious discrimination vis-à-vis failure to accommodate under Title VII. Defendant's Motion as to this claim is **DENIED**.

### C. Plaintiff's claims under Texas law should be dismissed.

#### 1. Plaintiff's intentional infliction of emotional distress claim fails as a matter of law.

Under Texas law, IIED is a "gap-filler" tort available only when there is no other recognized theory or redress, even if emotional distress results from the underlying actions. *Miller v. Target Corp.*, 854 Fed. Appx. 567, 569 (5th Cir. 2021); *Hoffman-LaRoche Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004). Plaintiff argues the same facts he alleged for his Title VII claim to seek recovery for IIED. *See* ECF No. 3 at 8–9. Because Plaintiff pleaded a recognized theory of relief under Title VII, his IIED claim must be dismissed. Accordingly, Defendant's Motion as to this claim is **GRANTED**.

#### 2. Plaintiff's negligence claim is preempted.

A state law claim is preempted by a federal statute when the "gravamen of a plaintiff's complaint is of the type of wrong that the statutory remedy was meant to cover." *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 808–09 (Tex. 2010) (quoting *Hoffman-LaRoche Inc.*, 144 S.W.3d at 447–48); *id.* at 802 n.8 ("[A] plaintiff is barred from recovery based on a common law tort where a statutory remedy is available for the same conduct that underlies the tort claim.").[13]

---

[13] S*ee also McReynolds v. Bell Textron, Inc.*, No. 4:22-CV-00194-O-BP, 2023 WL 2432916, at *2 (N.D. Tex. Feb. 2, 2023), *report and recommendation adopted*, 2023 WL 2432028 (N.D. Tex. Mar. 9, 2023) (state tort claim preempted because it "duplicates [plaintiff's] employment discrimination claim"); *Johnson v. Blue Cross/Blue Shield of Tex.*, 375

Here, Plaintiff alleges negligence based on injuries he suffered from eventually taking the vaccine because of Defendant's threat of reduction in pay. *See* ECF Nos. 3 at 8; 27 at 3. Like his IIED claim, his negligence action arises from the same set of facts to support his Title VII claims. The Texas Supreme Court has held that similar negligence claims are preempted by the Texas Commission on Human Rights Act ("TCHRA"). *Waffle House*, 313 S.W.3d at 801–02. Because the TCHRA was modeled after federal law intended to execute Title VII policies, federal courts have likewise found negligence claims of this nature are preempted by Title VII.[14] Accordingly, Defendant's Motion as to Plaintiff's negligence claim is **GRANTED**.

### CONCLUSION

Defendant's Motion is **GRANTED** as to Plaintiff's Texas state law claims of negligence and IIED — and those claims are **DISMISSED**. Insofar as Defendant seeks dismissal of ADA claims, the Motion is **DENIED** as moot because Plaintiff is not advancing a theory under the ADA. Defendant's Motion is **DENIED** as to Plaintiff's Title VII claims of retaliation and religious discrimination vis-à-vis failure to accommodate.

**SO ORDERED.**

December 4, 2023.

MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE

---

F. Supp. 2d 545, 549 (N.D. Tex. 2005) (Plaintiff's state law negligent hiring claim was "preempted by his [Title VII claim] based on the same facts or occurrence.").

[14] *Blair v. Brookshire Bros., Inc.*, No. 9:18-CV-00111-RC, 2019 WL 1119373, at *9 (E.D. Tex. Feb. 7, 2019), *report and recommendation adopted*, No. 9:18-CV-00111-RC, 2019 WL 1114869 (E.D. Tex. Mar. 9, 2019) (collecting cases and dismissing negligence claims as preempted).